# United States District Court
## For The Middle District of Florida
## Tampa Division

| | |
|---|---|
| Blake Warner | Case Number |
| v. | Jury Trial Demanded |
| Hillsborough County Clerk of Courts | Challenge to the Constitutionality of Fla. Stat. § 116.21, § 50.031 |

## Complaint

## Introduction

Plaintiff, Blake Warner, *pro se*, hereby brings this action against *Hillsborough County Clerk of Courts* ("Clerk") under the Takings Clause, Due Process Clause, and First Amendment of the United States, 42 U.S.C. § 1983, and breach of fiduciary duty, for embezzling $3,600 from his escrow account[1] through self-dealing and other fraudulent acts, then threatening criminal prosecution of *Plaintiff* in retaliation for *Plaintiff* engaging in protected First Amendment activity when he requested that his money be returned.

---

[1] and approximately $170,000 from victims in 234 other court case registry accounts.

1

## Parties

1. *Plaintiff*, Blake Warner, is a natural person who, at all times relevant, was a resident of Hillsborough County, Florida.

2. *Defendant*, *Hillsborough County Clerk of Courts*, is a local government entity whose principal place of business is in Hillsborough County, Florida.

3. Clerk is not only Clerk of the Circuit Court, but also the County Treasurer, Recorder, Auditor, Finance Officer, and Ex-Officio Clerk of the County Commission.

4. The Clerk performs a wide range of record keeping, information management, and financial management (including escrow accounts) for the judicial system and county government.

## I  Jurisdiction

5. This Court has subject matter jurisdiction under:

    (a) 28 U.S.C. § 1331 (federal question).

    (b) 28 U.S.C. § 1391 (venue).

    (c) 42 U.S.C. § 1983.

    (d) Supplemental subject matter jurisdiction of the pendent state law claims under 28 U.S.C. § 1367.

## Facts

6. On April 25, 2018, *Plaintiff*'s then landlord initiated an eviction action against him, *BOUTIQUE APARTMENTS LLC v WARNER* (Fla. Hillsborough Cty. Ct.

7. 2018) case number 18-CC-022377, alleging a breach of the lease.

7. On May 10, 2018, that court ordered *Plaintiff* to deposit $1699.00 per month into the court registry.

8. The court registry is an escrow account operated by *Defendant*.

9. *Plaintiff* paid a total of $3,600 into the court registry while the case was pending, until June 2018 when he surrendered the residential property in dispute at the end of his lease, mooting the case.

10. *Plaintiff* reposed trust in *Defendant* to hold his funds for him, to keep those funds secure, and to act as an agent of *Plaintiff* regarding the transfer of those funds either to either Mr. Warner or the other principal, Boutique Apartments LLC.

11. *Plaintiff* paid a fee to *Defendant* for their escrow services.

12. On July 9, 2021, *Defendant* published a legal notice in the "newspaper" La Gaceta that–inter alia–contained a list of alleged abandoned court registry funds, but did not publish any unclaimed notices under *Plaintiff*'s name.

13. On September 1, 2021, *Defendant* entered an entry on the court docket–without properly serving *Plaintiff*–that stated "UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED".

## La Gaceta Newspaper

14. Fla. Stat. 116.21 requires the Clerk to publish a "list of any or all unclaimed moneys" in a "newspaper of general circulation" before those funds can be forfeited to such county.

3

15. La Gaceta was founded by Victoriano Manteiga in 1922, a former lector in the cigar factories of West Tampa and Ybor City, to serve the needs of the Cuban immigrant population of Tampa *in Spanish*.

16. La Gaceta's target audience is, and always has been, the Hispanic–Spanish speaking– population of Tampa.

17. The current publisher of La Gaceta, Patrick Manteiga, stated in a March 2022 Tampa Bay Times article: "So in the 1950s, we added English because we had to (to get legal advertising.)".

18. The English portion of La Gaceta is not a translation of the Spanish portion of the newspaper, but rather consists of wholly distinct content, tucked away in the back of the newspaper.

19. The English portion of the newspaper is not news at all; but rather editorials, and is best described as an English magazine.

20. La Gaceta is distributed and read by less than ten percent of the households in Hillsborough County.

21. The bulk of La Gaceta's income in derived from legal advertisement revenue.

22. A La Gaceta subscription cannot be purchased from it's website, you must call in and give a credit card or visit their office.

23. La Gaceta is only sold at two Wawa gas stations in Tampa.

24. *Plaintiff* is a non-Hispanic African-American male who cannot read or understand Spanish and lives in a neighborhood that is at least 90% non-Hispanic Caucasian.

25. *Plaintiff* has spent much of his childhood and adulthood in Tampa, and he has *never* heard of La Gaceta prior to conducting an investigation into the facts and circumstances regarding this action.

26. La Gaceta does not meet the requirements of Fla. Stat. § 50.031 for a newspaper to be eligible to publish legal notices.

27. La Gaceta does not meet the "newspaper of general circulation" requirement of Fla. Stat. § 116.21.

## Fiduciary Duty

28. The court registry holds funds (monies) by the authority of the Florida State Statutes or by Order of the Court, pending further action by the court. It is an escrow account.

29. Escrow holders are recognized as agents of the parties to the escrow and as trustees in charge of the performance of an express trust.

30. *Defendant*, as the escrow agent of the court registry, owed a fiduciary duty to *Plaintiff*.

31. *Defendant*'s website states that they owe a fiduciary duty related to these funds[2].

---

[2] https://hillsclerk.com/Court-Services/Court-Registry

32. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of care to act as a reasonable person would in the circumstances and to protect the property that is entrusted to them as if the property were their own.

33. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of loyalty to only act in the *Plaintiff*'s best interests.

34. *Defendant*, as the escrow agent of the court registry, owed *Plaintiff* a duty of full disclosure to disclose all information that is material to the transaction to the principals in a timely manner.

35. *Defendant* breached their duties when they engaged in self-dealing by unilaterally seizing the funds that *Plaintiff* had deposited.

36. *Defendant* at all times had access to *Plaintiff*'s current email address, phone number, and e-file account, as it was contained in the court docket, and the e-filing system profile which was assigned to the case and in good standing.

37. When *Defendant* posted notices to the docket, they explicitly did not check the box that would serve *Plaintiff* with the notice, because *Defendant* did not want *Plaintiff* to know that they were seeking to take his money. Had *Defendant* checked the box, *Plaintiff* would have been notified at his current email address automatically.

38. *Defendant* intentionally *only* mailed the notice to an address that they knew, or should have known, that *Plaintiff* no longer resided at, because they had previously received returned mail address to *Plaintiff* from that address.

39. *Defendant* intentionally sought out the least read "newspaper" in Tampa, that they thought would barely meet the statutory requirements of Fla. Stat. § 116.21 and Fla. Stat. § 50.031, because they did *not* want people to know that they could claim their money, so that *Defendant* could take it for themselves.

40. *Defendant* breached their duties when they failed to conduct a reasonable inquiry / attempt to contact *Plaintiff* to return his funds. They performed no due diligence in their search for *Plaintiff*.

41. Minimum due process requires required both adequate notice and a hearing, both of which *Defendant* failed to provide before seizing his property.

42. Due process requires that *Defendant* file an interpleader action, or at the very least hold a hearing, if they wanted to seize *Plaintiff*'s escrow funds.

## COUNT I
*Due Process Clause: Adequate Notice and Hearing*

43. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

44. *Defendant* failed to provide adequate notice to *Plaintiff* before taking his money without just compensation.

45. *Defendant* did not comply with the procedural requirements of Fla. Stat. § 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on it's face because it violates the due process clause by failing to provide adequate notice.

## COUNT II

*Takings Clause: Escrow Fund*

46. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

47. *Defendant* seized *Plaintiff*'s escrow funds for public use, by transferring the funds to the Hillsborough County fine and forfeiture fund.

48. *Defendant* did not compensate *Plaintiff* for the use of his funds.

49. *Defendant* did not comply with the procedural requirements of Fla. Stat. § 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on it's face because it violates the due process clause by failing to provide adequate notice.

## COUNT III

*Breach of Fiduciary Duty: Embezzlement*

50. *Plaintiff* re-alleges and incorporates by reference ¶ 6 - 42

51. *Defendant*, as the escrow agent of the court registry, breached their duties when faced with a conflict of interest, chose to ignore that conflict, and then engage in self-dealing by unilaterally seizing–without court order–the principal/*Plaintiff*'s funds for their own use without conducting a reasonable/diligent attempt to return the funds or providing adequate notice to *Plaintiff*.

52. As a direct result of this breach, *Plaintiff* suffered damages in the loss of the funds that he had deposited and entrusted to *Defendant*.

## COUNT IV

### *Defamation Per Se: Extortion*

53. On July 29, 2022, *Plaintiff* sent an attorney–who had previously indicated to *Plaintiff* that they represented *Defendant* in this matter–a Fla. Stat. 772.11 demand letter which stated:

    "This is a letter demanding $10,800 (tripple $,3600) pursuant Fla. Stat. 772.11 for your client, Clerk of the Hillsborough County Circuit Court, embezzling $3,600 from Mr. Warner's escrow account held for case number 2018-CC-22377. After 30 days, absent either payment or stipulation, a lawsuit will be filed against your client for theft and breach of fiduciary duty, among other possible causes of action."

54. On August 26, 2022, the attorney responded by sending a letter to *Plaintiff* which explicitly stated that *Plaintiff* had committed felonious extortion in violation of Fla. Stat.§ 836.05 "Threats; extortion" by threatening to file a lawsuit if they did not pay him the statutorily authorized treble damages to settle the claim[3].

55. The statute states in part "Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section.".

---

[3]"We trust it was not your intent to commit extortion" -Akerman LLP

56. The demand letter does not meet the elements of Fla. Stat.§ 836.05.

57. The attorney focuses his practice on business and commercial litigation, including derivative and direct actions, breaches of fiduciary duties and contracts, intellectual property disputes, and fraudulent misrepresentation, representing entities and individuals. In addition, he has experience with condominium and homeowner's association law, including litigation enforcing covenants, statutory compliance, landlord-tenant litigation, and serving as general counsel directly advising the board of directors.

58. The attorney is highly skilled, well educated, and employed at a very prestigious big law firm that hires the best and the brightest attorneys.

59. This attorney, with his skill and expertise, knew that *Plaintiff*'s demand letter did not constitute criminal extortion, yet made the statement anyway in an attempt to chill Mr. Warner's constitutional right to petition his government for redress.

60. The attorney published these statements to an Akerman LLC partner and a paralegal.

61. As a direct and proximate cause of the attorney's false statements, *Plaintiff* did not file a treble damages claim under Fla. Stat. 772.11. *Plaintiff* has suffered an prospective economic loss of those treble damages.

## Count V

*First Amendment Retaliation: Extortion*

62. *Plaintiff* re-alleges and incorporates by reference ¶ 53 - 61

63. *Plaintiff* engaged in protected first amendment activity by sending *Defendant*, his government, a Fla. Stat. 772.11 legal demand for the return of funds they embezzled from him.

64. In response, the government told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the statute.

65. A person of ordinary firmness, would interpret this as a threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*.

66. *Defendant* intended to chill *Plaintiff*'s first amendment right (to file a lawsuit against them) through the threat of felony criminal prosecution.

## Prayer For Relief

Wherefore, *Plaintiff* respectfully requests that this Court:

(a) Enter an order that *Defendant* has violated *Plaintiff*'s constitutional rights by taking his property for public use without just compensation;

(b) Enter an order for damages and/or compensation for the value of the property taken by *Defendant* and disgorgement of interest;

(c) Enter an order for any and all damages available under federal law as applicable, including, but not limited to, an award for nominal and punitive damages;

(d) Enter an order declaring Fla. Stat. § 116.21 unconstitutional as applied and/or on it's face, and § 50.031 as applied;

(e) Award *Plaintiff* his reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, and other applicable law; and

(f) Grant such other and further relief as is just and appropriate.

## Demand for Jury Trial

*Plaintiff* hereby demands a trial by jury on all issues so triable.

8-29-2022

Date

Signature

Blake Warner, *pro-se*

3002 W Cleveland Street, #C8

Tampa, FL 33609

E-Service: BLAKE@NULL3D.COM