UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

    Plaintiff,

V.

                                        CASE NUMBER: 8:22-CV-1977

HILLSBOROUGH COUNTY
CLERK OF COURTS,

    Defendant,

_____/

**DEFENDANT'S ANSWER TO COMPLAINT**

Defendant, HILLSBOROUGH COUNTY CLERK OF COURTS ("Clerk"), by and through its undersigned counsel, hereby answers the correspondingly numbered paragraphs of Plaintiff BLAKE WARNER's ("Plaintiff") August 29, 2022 Complaint, and states:

**GENERAL DENIAL**

The Clerk denies any wrongdoing. The Clerk denies all allegations by Plaintiff, except as specifically set forth below. Further, legal conclusions do not require a response; to the extent a response is required, Plaintiff's legal conclusions are denied. The Clerk denies any allegations either express or implied in the headings, subheadings, and defined terms in this Answer. The use of certain headings, subheadings, and defined terms from the Complaint,

66148838;4

is for ease of reference only and is not to be construed as an admission by the Clerk.

The Clerk denies Plaintiff's allegations within his "Introduction" and denies Plaintiff is entitled to any relief.

## PARTIES

1. **Plaintiff, Blake Warner, is a natural person who, at all times relevant, was a resident of Hillsborough County, Florida.**

RESPONSE: Without knowledge, and therefore denied.

2. **Defendant, Hillsborough County Clerk of Courts, is a local government entity whose principal place of business is in Hillsborough County, Florida.**

RESPONSE: Admitted.

3. **Clerk is not only Clerk of the Circuit Court, but also the County Treasurer, Recorder, Auditor, Finance Officer, and Ex-Officio Clerk of the County Commission.**

RESPONSE: Admitted.

4. **The Clerk performs a wide range of record keeping, information management, and financial management (including escrow accounts) for the judicial system and county government.**

RESPONSE: Admitted.

## JURISDICTION

5. **This Court has subject matter jurisdiction under:**
(a) **28 U.S.C. 1331 (federal question).**
(b) **28 U.S.C. 1391 (venue).**
(c) **42 U.S.C. 1983.**
(d) **Supplemental subject matter jurisdiction of the pendent state law claims un-der 28 U.S.C. 1367.**

RESPONSE: The Clerk admits jurisdiction before this Court but denies any wrongdoing.

## FACTS

**6.** On April 25, 2018, Plaintiff's then landlord initiated an eviction action against him, BOUTIQUE APARTMENTS LLC v WARNER (Fla. Hillsborough Cty. Ct. 2018) case number 18-CC-022377, alleging a breach of the lease.

RESPONSE: Admitted.

**7.** On May 10, 2018, that court ordered Plaintiff to deposit $1699.00 per month into the court registry.

RESPONSE: Admitted.

**8.** The court registry is an escrow account operated by Defendant.

RESPONSE: Admitted.

**9.** Plaintiff paid a total of $3,600 into the court registry while the case was pending, until June 2018 when he surrendered the residential property in dispute at the end of his lease, mooting the case.

RESPONSE: Without knowledge, therefore denied.

**10.** Plaintiff reposed trust in Defendant to hold his funds for him, to keep those funds secure, and to act as an agent of Plaintiff regarding the transfer of those funds either to either Mr. Warner or the other principal, Boutique Apartments LLC.

RESPONSE: Without knowledge, therefore denied.

**11.** Plaintiff paid a fee to Defendant for their escrow services.

RESPONSE: Without knowledge, therefore denied.

**12.** On July 9, 2021, Defendant published a legal notice in the "newspaper" La Gaceta that–inter alia–contained a list of alleged abandoned court registry funds, but did not publish any unclaimed notices under Plaintiff's name.

RESPONSE: Denied.

**13.    On September 1, 2021, Defendant entered an entry on the court docket–without properly serving Plaintiff –that stated "UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED".**

RESPONSE: Denied.

## LA GACETA NEWSPAPER

**14.    Fla. Stat. 116.21 requires the Clerk to publish a "list of any or all unclaimed moneys" in a "newspaper of general circulation" before those funds can be forfeited to such county.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**15.    La Gaceta was founded by Victoriano Manteiga in 1922, a former lector in the cigar factories of West Tampa and Ybor City, to serve the needs of the Cuban immigrant population of Tampa in Spanish.**

RESPONSE: Without knowledge, therefore denied.

**16.    La Gaceta's target audience is, and always has been, the Hispanic–Spanish speaking– population of Tampa.**

RESPONSE: Without knowledge, therefore denied.

**17.    The current publisher of La Gaceta, Patrick Manteiga, stated in a March 2022 Tampa Bay Times article: "So in the 1950's, we added English because we had to (to get legal advertising.)".**

RESPONSE: Without knowledge, therefore denied.

**18.    The English portion of La Gaceta is not a translation of the Spanish portion of the newspaper, but rather consists of wholly distinct content, tucked away in the back of the newspaper.**

RESPONSE: Without knowledge, therefore denied.

4

66148838;4

**19.** The English portion of the newspaper is not news at all; but rather editorials, and is best described as an English magazine.

RESPONSE: Denied.

**20.** La Gaceta is distributed and read by less than ten percent of the households in Hillsborough County.

RESPONSE: Denied.

**21.** The bulk of La Gaceta's income in derived from legal advertisement revenue.

RESPONSE: Without knowledge, therefore denied.

**22.** A La Gaceta subscription cannot be purchased from it's website, you must call in and give a credit card or visit their office.

RESPONSE: Denied.

**23.** La Gaceta is only sold at two Wawa gas stations in Tampa.

RESPONSE: Denied.

**24.** Plaintiff is a non-Hispanic African-American male who cannot read or understand Spanish and lives in a neighborhood that is at least 90% non-Hispanic Caucasian.

RESPONSE: Without knowledge, therefore denied.

**25.** Plaintiff has spent much of his childhood and adulthood in Tampa, and he has never heard of La Gaceta prior to conducting an investigation into the facts and circumstances regarding this action.

RESPONSE: Without knowledge, therefore denied.

**26.** La Gaceta does not meet the requirements of Fla. Stat. 50.031 for a newspaper to be eligible to publish legal notices.

RESPONSE: Denied.

**27.** La Gaceta does not meet the "newspaper of general circulation" requirement of Fla. Stat. 116.21.

RESPONSE: Denied.

**28.     The court registry holds funds (monies) by the authority of the Florida State Statutes or by Order of the Court, pending further action by the court. It is an escrow account.**

RESPONSE: The Clerk admits the registry holds funds by the authority of the applicable laws of Florida and Florida courts. The legal classification of the account in which the monies are in is a legal conclusion and thus requires no response and is therefore denied.

**29.     Escrow holders are recognized as agents of the parties to the escrow and as trustees in charge of the performance of an express trust.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**30.     Defendant, as the escrow agent of the court registry, owed a fiduciary duty to Plaintiff.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**31.     Defendant's website states that they owe a fiduciary duty related to these funds.**

RESPONSE: The Clerk admits its website states: "The Accounting Department has a fiduciary responsibility related to funds collected and disbursed by court order or other legal authority."

**32. Defendant, as the escrow agent of the court registry, owed Plaintiff a duty of care to act as a reasonable person would in the circumstances and to protect the property that is entrusted to them as if the property were their own.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**33. Defendant, as the escrow agent of the court registry, owed Plaintiff a duty of loyalty to only act in the Plaintiff's best interests.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**34. Defendant, as the escrow agent of the court registry, owed Plaintiff a duty of full disclosure to disclose all information that is material to the transaction to the principals in a timely manner.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**35. Defendant breached their duties when they engaged in self-dealing by unilaterally seizing the funds that Plaintiff had deposited.**

RESPONSE: Denied.

**36. Defendant at all times had access to Plaintiff's current email address, phone number, and e-file account, as it was contained in the court docket, and the e-filing system profile which was assigned to the case and in good standing.**

RESPONSE: Without knowledge, therefore denied.

**37.** When Defendant posted notices to the docket, they explicitly did not check the box that would serve Plaintiff with the notice, because Defendant did not want Plaintiff to know that they were seeking to take his money. Had Defendant checked the box, Plaintiff would have been notified at his current email address automatically.

RESPONSE: Denied.

**38.** Defendant intentionally only mailed the notice to an address that they knew, or should have known, that Plaintiff no longer resided at, because they had previously received returned mail address to Plaintiff from that address.

RESPONSE: Denied.

**39.** Defendant intentionally sought out the least read "newspaper" in Tampa, that they thought would barely meet the statutory requirements of Fla. Stat. 116.21 and Fla. Stat. 50.031, because they did not want people to know that they could claim their money, so that Defendant could take it for themselves.

RESPONSE: Denied.

**40.** Defendant breached their duties when they failed to conduct a reasonable inquiry / attempt to contact Plaintiff to return his funds. They performed no due diligence in their search for Plaintiff.

RESPONSE: Denied.

**41.** Minimum due process requires required both adequate notice and a hearing, both of which Defendant failed to provide before seizing his property.

RESPONSE: Denied.

**42.** Due process requires that Defendant file an interpleader action, or at the very least hold a hearing, if they wanted to seize Plaintiff 's escrow funds.

RESPONSE: Denied.

## COUNT I

### Due Process Clause: Adequate Notice and Hearing

**43.   Plaintiff re-alleges and incorporates by reference ¶ 6 – 42.**

RESPONSE: The Clerk restates its responses to paragraphs 6-42 above.

**44.   Defendant failed to provide adequate notice to Plaintiff before taking his money without just compensation.**

RESPONSE: Denied.

**45.   Defendant did not comply with the procedural requirements of Fla. Stat. 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on it's face because it violates the due process clause by failing to provide adequate notice. [sic]**

RESPONSE: Denied.

## COUNT II

### Takings Clause: Escrow Fund

**46.   Plaintiff re-alleges and incorporates by reference ¶ 6 – 42.**

RESPONSE: The Clerk restates its responses to paragraphs 6-42 above.

**47.   Defendant seized Plaintiff's escrow funds for public use, by transferring the funds to the Hillsborough County fine and forfeiture fund. [sic]**

RESPONSE: Denied.

**48.   Defendant did not compensate Plaintiff for the use of his funds.**

RESPONSE: Denied that Plaintiff is entitled to compensation and denied that the money was "his funds" at the time of disposition. Otherwise denied.

9

66148838;4

**49. Defendant did not comply with the procedural requirements of Fla. Stat. § 116.21 or their fiduciary duties, and even if they did that statute is unconstitutional on its face because it violates the due process clause by failing to provide adequate notice.**

RESPONSE: Denied.

## COUNT III

### *Breach of Fiduciary Duty: Embezzlement*

**50.   Plaintiff re-alleges and incorporates by reference ¶ 6 – 42.**

RESPONSE: The Clerk restates its responses to paragraphs 6-42 above.

**51.   Defendant, as the escrow agent of the court registry, breached their duties when faced with a conflict of interest, chose to ignore that conflict, and then engage in self-dealing by unilaterally seizing–without court order–the principal/Plaintiff's funds for their own use without conducting a reasonable/diligent attempt to return the funds or providing adequate notice to Plaintiff.**

RESPONSE: Denied.

**52.   As a direct result of this breach, Plaintiff suffered damages in the loss of the funds that he had deposited and entrusted to Defendant.**

RESPONSE: Denied.

## COUNT IV

### *Defamation Per Se: Extortion*

**53.   On July 29, 2022, Plaintiff sent an attorney–who had previously indicated to Plaintiff that they represented Defendant in this matter–a Fla. Stat. 772.11 demand letter which stated:**

> **This is a letter demanding $10,800 (tripple $,3600) [sic] pursuant Fla. Stat. 772.11 for your client, Clerk of the Hillsborough County Circuit Court, embezzling $3,600 from Mr. Warner's escrow account held for case number 2018-CC-22377. After 30 days, absent either payment or stipulation, a lawsuit will be filed against**

10

**your client for theft and breach of fiduciary duty, among other possible causes of action.**

RESPONSE: The Clerk admits its counsel received a letter from Plaintiff dated July 29, 2022, a copy of which is attached as **Exhibit 1** (the "Demand Letter"). The Clerk disputes the allegations within the Demand Letter, but admits the Demand letter speaks for itself. The Clerk denies all allegations regarding the Demand Letter which are contradicted by the Demand Letter itself. Otherwise denied.

**54. On August 26, 2022, the attorney responded by sending a letter to Plaintiff which explicitly stated that Plaintiff had committed felonious extortion in violation of Fla. Stat.§ 836.05 "Threats; extortion" by threatening to file a lawsuit if they did not pay him the statutorily authorized treble damages to settle the claim.**

RESPONSE: Denied.

**55. The statute states in part "Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section.".**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

**56. The demand letter does not meet the elements of Fla. Stat. § 836.05.**

RESPONSE: To the extent this paragraph asserts legal conclusions, no response is required. The Clerk admits Florida law speaks for itself and denies all allegations contradicted by the law. Otherwise denied.

57. **The attorney focuses his practice on business and commercial litigation, including derivative and direct actions, breaches of fiduciary duties and contracts, intellectual property disputes, and fraudulent misrepresentation, representing entities and individuals. In addition, he has experience with condominium and homeowner's association law, including litigation enforcing covenants, statutory compliance, landlord-tenant litigation, and serving as general counsel directly advising the board of directors.**

RESPONSE: To the extent this paragraph asserts legal conclusions regarding the qualifications of counsel, no response is required. The Clerk denies any allegations of wrongdoing.

58. **The attorney is highly skilled, well educated, and employed at a very prestigious big law firm that hires the best and the brightest attorneys.**

RESPONSE: To the extent this paragraph asserts legal conclusions regarding the qualifications of counsel, no response is required. The Clerk denies any allegations of wrongdoing.

59. **This attorney, with his skill and expertise, knew that Plaintiff's demand letter did not constitute criminal extortion, yet made the statement anyway in an attempt to chill Mr. Warner's constitutional right to petition his government for redress.**

RESPONSE: Denied.

60. **The attorney published these statements to an Akerman LLC partner and a paralegal.**

RESPONSE: Denied.

61. **As a direct and proximate cause of the attorney's false statements, Plaintiff did not file a treble damages claim under Fla. Stat. 772.11. Plaintiff has suffered an prospective economic loss of those treble damages.**

RESPONSE: Denied.

## COUNT V

### *First Amendment Retaliation: Extortion*

**62.** Plaintiff re-alleges and incorporates by reference ¶ 53 – 61

RESPONSE: The Clerk restates its responses to paragraphs 53-61 above.

**63.** **Plaintiff engaged in protected first amendment activity by sending Defendant, his government, a Fla. Stat. 772.11 legal demand for the return of funds they embezzled from him.**

RESPONSE: Denied.

**64.** **In response, the government told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the statute.**

RESPONSE: Denied.

**65.** **A person of ordinary firmness, would interpret this as a threat for criminal prosecution if Plaintiff followed through with his legal demand and initiated civil legal proceedings against Defendant.**

RESPONSE: Denied.

**66.** **Defendant intended to chill Plaintiff's first amendment right (to file a lawsuit against them) through the threat of felony criminal prosecution.**

RESPONSE: Denied.

WHEREFORE, the Clerk requests that Plaintiff's Complaint be dismissed for the failure to state a claim, for its attorney's fees and costs pursuant to Florida Statute § 772.11, or as otherwise permitted under the law, and for such other relief as the Court deems just and proper.

13

## AFFIRMATIVE DEFENSES

Without conceding that the Clerk bears the burden of proof as to any issue, and without conceding liability, the Clerk asserts the following defenses to Plaintiff's Complaint:

### First Affirmative Defense

Plaintiff's claims are barred by the express and unequivocal provisions of § 116.21(4), Fla. Stat. (2020), which provide, in pertinent part:

> Upon such payment to the fine and forfeiture fund, the sheriff or clerk shall be released and discharged from any and all further responsibility or liability in connection therewith.

§ 116.21(4), Fla. Stat. Payment was made to the fine and forfeiture fund, and the Clerk is thereby released and discharged from any and all further responsibility or liability in connection therewith.

### Second Affirmative Defense

The Clerk denies that Plaintiff is entitled to any monetary or equitable relief. Plaintiff's claims are barred by the doctrine of laches because Plaintiff unreasonably delayed in pursuing the funds.

Plaintiff ignored the Clerk's notices and correspondences apprising Plaintiff about the deadlines and steps necessary to claim the funds. Plaintiff delayed unreasonably, waiting until the funds were disposed before attempting to collect them

### Third Affirmative Defense

Plaintiff's claims against the Clerk are barred because the Clerk has fully complied with any and all applicable Florida laws regarding unclaimed funds in its registry, including, but not limited to, § 116.21(4), Fla. Stat.

### Fourth Affirmative Defense

Plaintiff's claims for defamation, defamation per se, or extortion are barred because Plaintiff has failed to state a cause of action for defamation, defamation per se, or extortion.

The letter Plaintiff attaches contradicts Plaintiff's allegations to the contrary. The exhibit merely states that certain actions "may" constitute extortion. The exhibit does <u>not</u> state that Plaintiff did commit extortion.

### Fifth Affirmative Defense

Plaintiff's claims for defamation, defamation per se, or extortion, whether labeled as "First Amendment retaliation" or in any other fashion, are barred because Plaintiff's allegations are barred by litigation privilege, because the letter was from the Clerk's counsel, to the Plaintiff, as part of pre-litigation correspondences discussing the claims or potential claims and apprising Plaintiff as to why his claims were frivolous.

Moreover, a law firm associate copying a law firm partner or other law firm staff on a letter to a party does not constitute publication outside of the bounds of litigation privilege.

15

66148838;4

### Sixth Affirmative Defense

Plaintiff's claims for defamation, defamation per se, or extortion, whether labeled as "First Amendment retaliation" or in any other fashion, are barred because Plaintiff's claims are contradicted by the actual language in the same correspondence to which Plaintiff refers. Specifically, the correspondence states:

> First, as detailed below, your threatened legal action is without merit.
>
> Second, threatening to accuse another of any crime or offense, including theft, with the intent to obtain money **may constitute** the crime of extortion. *See* Fla. Stat. § 836.05
> …
> **We trust it was not your intent to commit extortion**. And we write to explain why your proposed lawsuit would be frivolous and serve no purpose, other than to subject you to potential liabilities.

*See* August 26, 2022 Correspondence attached to Plaintiff's Complaint. (emphasis added).

### Seventh Affirmative Defense

Plaintiff's claims are barred because Plaintiff was negligent and caused his own alleged damages by abandoning the funds he deposited in the registry. Plaintiff ignored the Clerk's notices and correspondences apprising Plaintiff about the deadlines and steps necessary to claim the funds. Plaintiff delayed unreasonably, waiting until the funds were disposed before attempting to collect them.

16

66148838;4

### Eighth Affirmative Defense

Plaintiff's claims are barred because Plaintiff assumed the risk that his funds would be disposed of by the Clerk when Plaintiff abandoned the funds in the Clerk's registry. Plaintiff ignored the Clerk's notices and correspondences apprising Plaintiff about the deadlines and steps necessary to claim the funds, and waited until the funds were thereafter accordingly disposed before attempting to collect them.

### Ninth Affirmative Defense

Plaintiff's claims are barred because waived the right to claim the funds in the Clerk's registry when Plaintiff abandoned the funds in the Clerk's registry, ignored the Clerk's notices and correspondences apprising Plaintiff about the deadlines and steps necessary to claim the funds, and then waited until the funds were thereafter accordingly disposed before attempting to collect them.

### Tenth Affirmative Defense

Plaintiff's claims he elected to forgo filing other frivolous claims do not constitute damages. To the extent such claims constitute damages, they are too speculative.

### Eleventh Affirmative Defense

Plaintiff's purported to serve a demand for money and threatened to pursue claims against the Clerk, including for treble damages. The Clerk,

17

66148838;4

through counsel, served a response to Plaintiff's Demand Letter. The response does <u>not</u> satisfy the element of publication required for defamation <u>nor</u> retaliation required for Plaintiff's claims.

### Twelfth Affirmative Defense

At all times, the Clerk acted in good faith and in compliance with Florida law, barring Plaintiff's claims.

### Thirteenth Affirmative Defense

Plaintiff's claims challenging the Clerk's conduct under Florida Statute § 116.21 are barred because Plaintiff failed to comply with a condition precedent of filing written claims pursuant to Fla. Stat. § 116.21(3), and pursuant to Fla. Stat. § 116.21(4) this statute does not provide a private right of action for Plaintiff to seek relief and has released and discharged the Clerk from all potential liability.

### Fourteenth Affirmative Defense

Plaintiff's claims are barred because Plaintiff changed his address in the court file in Case No. 2018-CC-22377, 13th Judicial Circuit, Hillsborough County, on June 22, 2018, to 502 S. Fremont Ave #1322, Tampa, FL 33606 (the "Fremont Address"), and Plaintiff failed to file any subsequent change of address.

A true and correct copy of Plaintiff's Notice of Address Change is attached hereto as **Exhibit 2**. Plaintiff did <u>not</u> file any subsequent notice to

apprise the court or the Clerk of a new address different from the Fremont Address.

Pursuant to the Thirteenth Judicial Circuit, Hillsborough County, Florida, Administrative Order S-2019-005 ("AO-S-2019-005"), paragraphs 2-3, Plaintiff was required to file a designation of his new address upon a change of address.  A true and correct copy of AO-S-2019-005 is attached as **Exhibit 3**. Plaintiff knew how to file the designation of change of address, because he filed such a notice on June 22, 2018 – and it was logical and reasonable for the Clerk to rely upon Plaintiff's representations of his own address. Plaintiff could have filed a subsequent notice of change of address, and Plaintiff did not.  The Clerk complied with Florida law and provided proper notice to the Plaintiff.

The Clerk reserves the right to assert additional affirmative defenses and to supplement its current affirmative defenses as discovery warrants.

Respectfully submitted,

*/s/ Patrick S. Brathwaite*
**Jason L. Margolin, Esq.**
Lead Counsel
Florida Bar No.: 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Patrick S. Brathwaite, Esq.**
Florida Bar No.: 1018493
patrick.brathwaite@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602

>Telephone: (813) 223-7333
>Facsimile: (813) 223-2837
>*Attorneys for the Clerk of Hillsborough County Circuit Court*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via the EPortal and e-mail on September 19, 2022, to Blake Warner at blake@null3d.com.

>*/s/ Patrick S. Brathwaite*
>Patrick S. Brathwaite