# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

BLAKE WARNER,

     Plaintiff,

v.
                              Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
                              **Dispositive Motion**
CLERK OF COURTS,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Hillsborough County Clerk of Court (the "Clerk") moves for judgment on the pleadings. Plaintiff Blake Warner ("Mr. Warner") claims the Clerk breached alleged duties associated with rent money he deposited into its registry in underlying litigation and brings claims related to a demand letter he served upon the Clerk for that same money. There is no factual dispute the Clerk deposited the unclaimed funds in accordance with Florida Statute § 116.21.

Mr. Warner's specific claims are:

1. A purported violation of Mr. Warner's due process rights through inadequate notice before treating his deposit as unclaimed, Doc. 1 ¶¶ 43–45;

2. A purported violation of the takings clause because of the forfeited deposit, *id*. at ¶¶ 46–49;

3. An alleged breach of a fiduciary duty, *id.* at ¶¶ 50–52;

4. Defamation, *id.* at ¶¶ 53–61; and

5. Retaliation, *id.* at ¶¶ 52–66.

Mr. Warner's claims all fail as a matter of law because Mr. Warner cannot establish the necessary elements. The Clerk's affirmative defenses, which are established by the undisputed parts of the parties' pleadings, also demonstrate the Clerk is entitled to judgment as a matter of law.

## I.   BACKGROUND FACTS

This litigation stems from an eviction action filed against Mr. Warner by his then-landlord in 2018 in the county court of Hillsborough County, *Boutique Apartments LLC v. Warner*, Case No. 18-CC-022377. Doc. 1 ¶ 6; Doc. 11 ¶ 6. Mr. Warner deposited his outstanding rent payments into the court registry pending resolution of the case, per Florida Statute § 83.60(2). Doc. 1 ¶ 7; Doc. 11 ¶ 7. On April 27, 2018, near the start the case, Mr. Warner filed his answer, defenses, counterclaims, and third-party complaint. *See generally* Exhibit A.[1] The responsive filing by Mr. Warner verified his address as 3012 W. De Leon St. #23, Tampa, Florida 33609. *Id.*

---

[1] To minimize volume, only the relevant excerpts (cover page, table of contents, and pages at the end of the document showing Mr. Warner's address at the time) are attached as Exhibit A. *See also U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (holding courts may judicially notice filings in other dockets to establish the fact of the litigation and related filings); *Hernandez v. Aurobindo Pharma USA, Inc.*, 582 F. Supp. 3d 1192, 1200 (M.D. Fla. 2022) (explaining courts may take judicial notice when determining motions for

2

Because litigants are in the best position to know their own contact information, and in the interests of ensuring proper service on all parties, the Florida Rules of Judicial Administration (both currently and as they existed in 2018) require *pro se* litigants to include their service address on filings. FLA. R. JUD. ADMIN. 2.515(b); Exhibit B. Similarly, the Thirteenth Judicial Circuit, encompassing Hillsborough County, has had administrative orders in place for more than a decade requiring parties to update their address information when they move during the course of a lawsuit. Exhibit C; Exhibit D.[2] On June 22, 2018, Mr. Warner demonstrated his understanding of the change-of-address rules by formally updating his address via a "Notice of Address Change." Exhibit E. His updated address was 502 S. Fremont Ave. #1322, Tampa, Florida 33606 (the "Fremont Address"). *Id.* Mr. Warner did <u>not</u> file any further notice of address change forms.

After ten months of no record activity, the court issued a notice of intent to dismiss for lack of prosecution pursuant to Florida Rule of Civil Procedure 1.420(e) on March 30, 2020. Exhibit F (showing service to Mr. Warner at the Fremont Address). No record activity occurred in the sixty days following the notice, so on June 12, 2020, the court dismissed the case.

---

judgment on the pleadings). The public docket is available online at https://hover.hillsclerk.com/.

[2]    The 2019 version of the order replaced the 2007 version, but the 2007 version is still publicly available at https://www.fljud13.org/Portals/0/AO/DOCS/2007-036.pdf.

Exhibit G. Eight months passed, and on February 16, 2021, the Clerk mailed notices to each of the litigants informing them that the money Mr. Warner had deposited in the registry had not yet been claimed. Exhibit H (showing service to Mr. Warner at the Fremont Address). The notices provided a form the litigants could use to claim the funds and warned them the money would be forfeited if they did not make a claim by April 19, 2021. *Id.*

The Clerk also published a notice of the unclaimed funds on July 9, 2021, in La Gaceta, a local newspaper that is available to readers in English, Spanish, and Italian to reach a broad potential audience. Exhibit I, at 1 (highlights added); LA GACETA, https://lagacetanewspaper.com/ (last visited December 5, 2022).[3] People can subscribe to La Gaceta online, and a one-year subscription for Hillsborough County residents is only $35. *Subscribe to La Gaceta Today!*, LA GACETA, https://lagacetanewspaper.com/subscribe/ (last visited December 5, 2022). Non-subscribers can also purchase La Gaceta at multiple locations across the Tampa Bay region. *See* Doc. 1 ¶ 23.[4] The notice of the unclaimed funds was under the case caption, *Boutique Apartments LLC v. Blake Warner*, which included Mr. Warner's name. Exhibit I, at 1.

---

[3]   Mr. Warner admits La Gaceta published the notice on July 9, Doc. 1 ¶ 12, but the exhibit to his complaint is the August 26 edition, thus explaining why the funds at issue in this litigation do not appear in that exhibit. *See* Doc. 1-3.

[4]   Contrary to Mr. Warner's suggestions, La Gaceta is available at more than a mere two gas stations in Tampa. But for purposes of this motion, it is sufficient to note that La Gaceta is not difficult to obtain—a $35 annual subscription available for purchase online.

Neither Mr. Warner nor the other two litigants placed a claim to the funds following the notices. *See generally* Doc. 1 ¶¶ 37–39.[5] Accordingly, the unclaimed funds were escheated on September 1, 2021. Doc. 1 ¶ 13.[6]

Almost one-year later, on July 29, 2022, Mr. Warner sent an e-mail to the Clerk accusing it of "embezzling" the funds and "theft," and threatening to file a lawsuit if payment was not made. Doc. 1 ¶ 53; Doc. 11 ex. 1. The Clerk's responded through legal counsel, denying Mr. Warner's allegations and outlining legal deficiencies in his claims. Doc. 1 ¶ 54 n.3; Doc. 1-2. The response did <u>not</u> outright accuse Mr. Warner of extortion; it was a relatively tame reminder that phrasing is important, and Mr. Warner outright accused the Clerk of being a criminal over a civil dispute. Doc. 1 ¶ 53; Doc. 11 ex. 1; Doc. 1-2 (providing Mr. Warner with the benefit of the doubt by stating: "We trust it was not your intent to commit extortion."). The response did not suggest the Clerk itself would pursue a claim against Mr. Warner based on potential extortion or otherwise refer him for prosecution. Doc. 1-2.

---

[5]   Without admitting the unsupported allegations in these paragraphs of the Complaint, the Clerk cites Mr. Warner's implicit admission throughout them that Mr. Warner never filed a claim to the funds before this lawsuit. *See Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718–19 (11th Cir. 2011) (internal citations omitted) (noting statements in complaints and other pleadings are binding judicial admissions with "the highest possible probative value").

[6]   The Clerk disagrees with Mr. Warner's assertion that the funds were escheated "without serving notice." Nevertheless, Mr. Warner alleges the funds were disposed on September 1, 2021, which is accurate and a binding judicial admission.

## II.   STANDARD FOR DETERMINATION

"Federal Rule of Civil Procedure 12(c) . . . provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the competing pleadings'" *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (quoting Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1367 (3d ed. 2004)). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law," accepting as true all material facts alleged in the non-moving party's pleading. *Id.* at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). Threadbare legal conclusions in a complaint "are not entitled to the assumption of truth," but instead the complaint must include factual allegations that are plausible on their face. *Samara v. Taylor*, 38 F.4th 141, 152 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

In deciding a motion for judgment on the pleadings, a court can take judicial notice of public records. Fed. R. Evid. 201(d); *Jones*, 29 F.3d at 1553; *Hernandez*, 582 F. Supp. 3d at 1200.

## III.   MEMORANDUM OF LAW

Mr. Warner brings two sets of claims. Counts I through III relate to the underlying forfeiture of the funds by Mr. Warner. Counts IV and V relate to

67702620;3

the response the Clerk served to Mr. Warner's demand for the funds and accusations of supposed embezzlement and theft. As explained below, both sets of claims fail as a matter of law.

**A.    The Clerk is Entitled to Judgment as a Matter of Law Dismissing Mr. Warner's Counts I, II, and III Regarding the Disbursement of Funds.**

Counts I, II, and III fail as a matter of law because: (1) the Clerk complied with Florida Statute § 116.21; (2) no taking occurred; (3) no duty was breached; and (4) Mr. Warner failed to timely bring his claim.

**1.    The notices provided by the Clerk complied with due process requirements and otherwise followed the procedures in Florida Statute § 116.21 (Count I).**

First and foremost, Mr. Warner's claims fail because the Clerk fully complied with Florida Statute § 116.21. Florida Statute § 116.21 is comprised of four parts, the first of which requires the Clerk to deposit unclaimed funds into the fine and forfeiture fund every year:

> (1) The sheriffs and clerks of the courts of the various counties of the state are authorized at their discretion on or before September 25 of each and every year hereafter to pay into the fine and forfeiture fund of their respective counties, or the fine and forfeiture fund created under s. 142.01, any or all unclaimed moneys deposited or collected by them in their official capacity, which unclaimed moneys came into their hands prior to January 1 of the preceding year and for which moneys claim has not been made. Any unclaimed moneys collected or deposited by the clerk of the circuit court in the course of the clerk's court-related activities may be processed under this chapter; however, the clerk must pay for the cost of

7

> publication of the list of unclaimed court-related funds. **Any unclaimed court-related funds** collected or deposited by the clerk which remain unclaimed **must be deposited into the fine and forfeiture fund** established under s. 142.01.

Fla. Stat. § 116.21(1) (emphasis added).

Subsection 2 of Section 116.21 requires the Clerk to publish notice in July, specifying that monies must be claimed on or before September 1 and that unclaimed monies will be forfeited:

> (2) The sheriffs and clerks of the various courts of the respective counties may, during the month of July of each year, hereafter make and compile a list of any or all unclaimed moneys which came into their hands as provided in subsection (1) above. Such compilation shall list, in addition to the name of the defendant, the respective amounts of such unclaimed moneys. **Such list or compilation shall be published one time during the month of July in a newspaper of general circulation** in the county served by such sheriff or clerk, and the **notice shall specify that unless such moneys are claimed on or before September 1 after such publication that same shall be declared forfeited to such county**. Proof of such publication shall be made by the publisher of such newspaper and shall be filed and recorded in the minutes of the county commissioners of such county.

Fla. Stat. § 116.21(2) (emphasis added).

Subsection 3 of Section 116.21 bars any claim unless it is filed within the time required:

> (3) Persons having or claiming any interest in such funds or any portion of them shall file their written claims with the sheriff or clerk of the court of the county having custody of such funds within the time

specified by the notice and shall make sufficient proof to the sheriff or clerk of their ownership and upon so doing shall be entitled to receive any part of the moneys so claimed. For the purposes of this section, any municipality that has a municipal detention facility and that prosecutes through its own municipal prosecutor shall have a claim against any unclaimed moneys collected due to violations of that municipality's ordinances within the territorial jurisdiction of the county and for which a claim has not been made by the person entitled to such funds. **Unless claim is filed within such time as aforesaid, all claims in reference thereto are forever barred**.

Fla. Stat. § 116.21(3) (emphasis added).

Subsection 4 of Section 116.21 provides the Clerk with a complete release and discharge from any liability in connection with the funds once they are deposited in the fine and forfeiture fund:

(4) Except for the cost of publishing the notice for the clerk's unclaimed court-related moneys, the cost of publishing the notices as required by subsection (2) shall be paid by the county commissioners, and the sheriff or the clerk shall receive as compensation the regular fee allowed by statute for the collection of fines, fees, and costs adjudged to the state upon the amounts remitted to the fine and forfeiture fund. **Upon such payment to the fine and forfeiture fund, the sheriff or clerk shall be released and discharged from any and all further responsibility or liability in connection therewith**.

Fla. Stat. § 116.21(4) (emphasis added).

The undisputed facts establish the Clerk complied with Florida Statute § 116.21 and provided more notice than required. In Count I, Mr. Warner

9

alleges the Clerk did not comply with the due process requirements of the constitution or Florida Statute § 116.21. Doc. 1 ¶¶ 43–45. Thus, Mr. Warner's claim fails as a matter of law.

As quoted above, the notice aspect of the newspaper publication has three components: (1) it must run in July, (2) it must include the defendant's name, (3) it must include a statement that the funds will be forfeited if no claim is filed by September 1 of that same year. Florida Statute § 116.21(2). The Clerk's publication in La Gaceta complied with each of these requirements and included the necessary warning about disbursement of the funds. Exhibit I, at 1 (reflecting notice was published Friday, July 9, 2021, containing Mr. Warner's name), 7 (reflecting funds would be declared forfeited if written claim not filed on or before Sept. 1, 2021 by email or mail).

Notably, in deciding motions based on the pleadings, "courts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 n.10 (11th Cir. 1999)). Therefore, a review of the pleadings, Florida Statute § 116.21, and the published notice establishes the Clerk complied with the statute as a matter of law.

Mr. Warner attempts to circumvent these facts in two ways. First, Mr. Warner alleges notice was not adequate because he alleges "La Gaceta does not meet the 'newspaper of general circulation' requirement of Fla. Stat. § 116.21." Doc. 1 ¶¶ 27, 44.

The term "Newspaper of general circulation" is not defined in Chapter 116, but is found elsewhere in other Florida Statutes. For example, Florida Statute § 165.031(4) provides:

> (4) "**Newspaper of general circulation**" means a newspaper **printed in the language most commonly spoken in the area within which it circulates**, which is **readily available for purchase** by all inhabitants in its area of circulation, but does not include a newspaper intended primarily for members of a particular professional or occupational group, a newspaper the primary function of which is to carry legal notices, or a newspaper that is given away primarily to distribute advertising.

Fla. Stat. § 165.031(4) (emphasis added);[7] *see also Benson v. City of Miami Beach, Dept. of Cmty. Affairs,* 591 So. 2d 942, 943 (Fla. 3d DCA 1991) (providing an analysis of "general circulation" under a different statute); *City of St. Mary's v. St. Mary's Native Corp.,* 9 P.3d 1002, 1011 (Alaska 2000) (holding a newspaper of general circulation is one distributed "in a community when it 'contains news of general interest to the community and

---

[7] Chapter 165 is known as the Formation of Municipalities Act, and its "purpose … is to provide standards, direction, and procedures for the formation of municipalities in this state and the provision of municipal services." Fla. Stat. §§ 165.011, 165.021.

reaches a diverse readership.'") (quoting *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976)).

La Gaceta is a well-recognized, tri-lingual weekly newspaper in Tampa. *See* Sue Carlton, *For 100 years now, you simply had to read Tampa's La Gaceta newspaper*, TAMPA BAY TIMES (Mar. 9, 2022), https://www.tampabay.com/news/business/2022/03/09/for-100-years-now-you-simply-had-to-read-tampas-la-gaceta-newspaper/ [https://web. archive.org/web/20221209044701/https://www.tampabay.com/news/business/2 022/03/09/for-100-years-now-you-simply-had-to-read-tampas-la-gaceta-newspaper/] (noting La Gaceta's storied history and continued services of the Tampa community); La Gaceta, "Our History" page, https://lagacetanewspaper.com/our-history/. Although Mr. Warner attached the wrong edition of La Gaceta to his complaint, even that copy demonstrates La Gaceta covers a variety of stories designed to attract a broader readership (including English-speaking readers). *See generally* Doc. 1-3, at 9–18.

Based on the foregoing, La Gaceta meets the requirements for a newspaper of general circulation and Mr. Warner's assertion that notice was inadequate fails as a matter of law.

Second, Mr. Warner argues Florida Statute § 116.21 is unconstitutional on its face as a due process violation. But due process is satisfied as long as notice is given in a way reasonably designed to actually serve a party. *See,*

e.g., *Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1259 (11th Cir. 2002) ("Due process is satisfied so long as the method of notice is conducted 'in a manner 'reasonably calculated' to ensure that notice reaches the alien."). Courts recognize it would be effectively impossible for parties and the courts to perform extensive background or other checks to find addresses where parties do not provide those addresses themselves, and newspaper publication can be an appropriate form of notice that complies with the Due Process Clause. *E.g.*, *Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 866 (11th Cir. 2007) (approving notice by publication).

Although not required by statute, the Clerk also mailed a notice to Mr. Warner at the address he explicitly provided. Exhibit E; Exhibit H; *see, e.g.*, *Lee v. U.S. Postmaster Gen.*, 174 F. Supp. 3d 1325, 1327 (M.D. Fla. 2016) (mailing a notice to the last known address of a party meets the Constitution's due process requirements). This mailing occurred after eight months of docket inactivity, during which time Mr. Warner took no action to claim the funds. *See generally* Exhibits F–H. Following the mailed notice, Mr. Warner continued taking no actions to seek the funds despite the follow-up publication pursuant to Florida Statute § 116.21.

In short, the Clerk is entitled to judgment as a matter of law by virtue of the discharge afforded under Florida Statute § 116.21(4) because the Clerk provided adequate notice to Mr. Warner by publishing notice in compliance

13

with Florida Statute § 116.21, and independently, by mailing notice to the address Mr. Warner had provided to the Clerk.

**2.      Mr. Warner did not experience a "taking" (Count II).**

The Court should also enter judgment as a matter of law against Mr. Warner's taking claim in Count II, because the funds were lawfully acquired. *U.S. v. Morales*, 36 F. Supp. 3d 1276, 1293–94 (M.D. Fla. 2014) (concluding a claim alleging a violation of the Takings Clause failed because property was forfeited pursuant to statute).

In Count II, Mr. Warner attempts to fit his lawsuit into the framework of the Takings Clause. Doc. 1 ¶¶ 46–49. But this argument mistakes the underlying principles of the Takings Clause. The Fifth Amendment does not automatically apply every time a person forfeits his or her funds, but rather to cases involving eminent domain. In the analogous situation of civil forfeitures, the Supreme Court explained:

> Petitioner also claims that the forfeiture in this case was a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment, made applicable to the States by the Fourteenth Amendment. But if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may **not** be required to compensate an owner for property **which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain**.

*Bennis v. Mich.*, 516 U.S. 442, 452 (1996) (emphasis added); *accord Morales*, 36 F. Supp. 3d at 1293–94.

This case does <u>not</u> involve eminent domain. Here, Mr. Warner deposited funds into a court registry pursuant to Florida Statute § 83.60(2), and then forfeited those funds by failing to claim them as required by Florida Statute § 116.21. In other words, Hillsborough County obtained the funds through "the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452.[8]

Mr. Warner's complaint does not specify whether he is referring to the Florida Constitution, the Federal Constitution, or both. Because Mr. Warner is asserting federal jurisdiction and because the relevant provisions from the two constitutions are given the same interpretations, this motion assumes Mr. Warner asserts his rights under both. The outcome is the same regardless. *See, e.g.*, *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2011) (noting Florida and federal takings clauses are given the same interpretation), *rev'd on other grounds Koontz v. St. Johns River Mgmt. Dist.*, 570 U.S. 595 (2013); *Silvio Membreno & Fla. Ass'n of Vendors,*

---

[8] Although this motion does not rely on this point, Mr. Warner does not even properly allege he is the correct party that could have claimed the underlying funds—the other two parties in the eviction action arguably had better claims to the funds than him. Regardless, it is undisputed that none of the parties attempted to claim the funds.

*Inc. v. City of Hialeah*, 188 So. 3d 13, 20 (Fla. 3d DCA 2016) (noting Florida and federal due-process clauses are given the same interpretation).

The Takings Clause does not apply here. Accordingly, this Court should enter judgment dismissing Count II as a matter of law.

### 3. The Clerk did not Breach any Fiduciary Duty by Complying with Florida Law (Count III).

The Court should also enter judgment as a matter of law against Mr. Warner's breach of fiduciary duty claim in Count III because Florida Statute § 116.21(4) bars this claim.

In Count III, Mr. Warner attempts to plead a claim for "Breach of Fiduciary Duty: Embezzlement" alleging the funds were unilaterally seized without court order. Doc. 1, p.8 and ¶ 51. Generally, to state a claim for a breach of a fiduciary duty, Mr. Warner would need to show: (i) the Clerk owed him a fiduciary duty, (ii) the Clerk breached that duty, and (iii) Mr. Warner suffered damage resulted from the breach. *E.g.*, *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022). For purposes of this motion, the Clerk does not dispute the duty element.[9] The Clerk is entitled to judgment, as a matter of law, because the Clerk did <u>not</u> breach any duty and did <u>not</u> cause Mr. Warner any damage.

---

[9] *But see Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986) (recognizing general rule that relationship between bank and depositor is merely one of debtor to creditor).

16

The Clerk did <u>not</u> breach any duty, because the Clerk complied with the requirements of Florida law. Specifically, the Clerk is required to deposit unclaimed funds into the fine and forfeiture fund every year. Fla. Stat. § 116.21(1) ("**Any unclaimed court-related funds** collected or deposited by the clerk which remain unclaimed **must be deposited into the fine and forfeiture fund"**) (emphasis added). And having done so, the Clerk receives a full release and discharge of any and all duties related to the deposited funds. Fla. Stat. § 116.21(4) ("**Upon such payment** to the fine and forfeiture fund, the … **clerk shall be released and discharged from any and all** further **responsibility or liability** … .") (emphasis added). The Clerk's compliance with Florida law cannot constitute a breach of fiduciary duty. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014) ("[C]ourts must bear in mind that the duty of prudence, under ERISA **as under the common law of trusts**, does not require a fiduciary to break the law.") (emphasis added) (citing Restatement (Second) of Trusts § 166, Comment *a* ("The trustee is not under a duty to the beneficiary to do an act which is criminal or tortious")).

Separately, the Clerk did <u>not</u> cause Mr. Warner damage by complying with Florida law. The Clerk mailed notice to Mr. Warner (and the other litigants) and the Clerk published the statutorily required notice. Mr. Warner's alleged damages were self-inflicted, by his failure to claim the funds

17

within the time required, which bars his claim as a matter of law. *See* Fla. Stat. § 116.21(3) ("**Unless claim is filed within such time** as aforesaid, **all claims in reference thereto are forever barred**.") (emphasis added).

Therefore, the Clerk requests judgment in its favor on this claim.

**4.   Mr. Warner's claims are barred by their untimeliness, as his failure to satisfy the claims procedure was both a failure of a condition precedent and constituted abandonment (Counts I, II, and III).**

Independently, Counts I, II, and III are also barred because of Mr. Warner's own untimeliness in pursuing the funds and his own failure to file a notice of change of address prevent his attempted recovery here. Even *pro se* litigants like Mr. Warner must follow Florida's court rules and Florida Statutes. *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) (citing *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539–40 (Fla. 3d DCA 1992)); *see also U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . .").

As detailed above, the only party that failed any obligation here was Mr. Warner. On June 22, 2018, he demonstrated that he understood the need to keep the court informed of his current address by filing the notice that it had changed to 502 S. Fremont Avenue. Exhibit E. He then chose *not* to file any further notices of address changes, and the Clerk understandably relied

on the most recent notice it had from Mr. Warner. Exhibit H. Further, the Clerk complied with Florida Statute § 116.21 and published the required notice of unclaimed funds in July 2021. Exhibit I. As a result, Mr. Warner can only blame his own lack of diligence for the forfeiture of the funds, and pursuant to Florida Statute § 116.21(4), the Clerk is "released and discharged from any and all further responsibility or liability" for the deposit. Accordingly, the Clerk requests judgment on Counts I, II, and III.

**B.     Mr. Warner's Counts IV and V Regarding the Clerk's Response to his Demand Letter Fail as a Matter of Law.**

Counts IV and V fail as a matter of law because: (1) Mr. Warner cannot establish the required elements for defamation or retaliation; and (2) Florida's litigation privilege bars both claims.

### 1.     Mr. Warner cannot show the elements of defamation (Count IV).

The Court should enter judgment as a matter of law against Count IV because Mr. Warner cannot demonstrate any of the five required elements for a claim for defamation: (1) publication of a statement, (2) falsity of the statement, (3) knowledge or reckless disregard by the defendant, (4) actual damages, and (5) the statement must be defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

"Publication" requires the defendant "publish[] or communicate[] [the statement] to a third person; statements made to the person alleging the

defamation do not qualify." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007).

Here, Mr. Warner sent correspondence to the Clerk and the Clerk's attorneys sent a response letter **only** to Mr. Warner. Doc. 1-2. The only person who published the response was Mr. Warner himself when he chose to file it in this Court's public docket, but that act by him cannot and is not attributable to the Clerk. *E.g.*, *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330–31 (Fla. 3d DCA 1999) (holding plaintiff's decision to publish a statement cannot be attributable to the defendant). Accordingly, this Court should enter judgment dismissing Count IV as a matter of law.[10]

### 2. Florida's litigation privilege bars Mr. Warner's defamation claim (count IV).

Florida's broad litigation privilege bars Mr. Warner's defamation claim, even if all required elements were established (they are not). *See* Doc. 11, at 15 (raising the defense). Under the litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v.*

---

[10]   Because the publication element is dispositive, the Clerk does not address the other elements in this motion. The Clerk preserves its defenses that Mr. Warner cannot establish any statement was false, was defamatory, or caused action damage to Mr. Warner.

*U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Florida courts have expressly held that litigation privilege applies to "communicative acts" such as correspondences sent during litigation. *E.g.*, *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 525–26 (Fla. 3d DCA 2017); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 381, 384 (Fla. 2007) (applying the privilege to letters sent by a defendant that allegedly misrepresented the amount of money that the plaintiffs owed as debts).

The Clerk's correspondence fits within that scope—it was a direct response to Mr. Warner's own pre-suit communication accusing the Clerk of engaging in purportedly criminal behavior. For the same reason that the litigation privilege would protect Mr. Warner's letter, however inflammatory, it likewise enables the Clerk to respond by pointing out the flaws in Mr. Warner's position. Recognizing this point fits with the purpose of the rule by enabling parties to engage in normal litigation procedures without fearing that their ordinary communications will result in lawsuits. *See Levin*, 639 So. 2d at 608. Accordingly, this Court should enter judgment as a matter of law against Mr. Warner's defamation claim premised upon the Clerk's response to Mr. Warner's demand letter.

### 3.   Mr. Warner Cannot Establish a Retaliatory Act (Count V).

The Court should enter judgment as a matter of law against Count V because Mr. Warner cannot demonstrate that the Clerk engaged in any behavior sufficient to support a First Amendment retaliation claim.

To prevail on a First Amendment retaliation claim, Mr. Warner must show three elements: (1) he engaged in constitutionally protected speech, (2) he suffered an adverse action, and (3) a causal relationship exists between the protected speech and the adverse action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)). Mr. Warner predicates his retaliation claim on allegations the Clerk told him his "demand letter was criminal extortion and cited the statute." Doc. 1 ¶ 64. From the pleadings, as a matter of law, Mr. Warner cannot meet the second and third elements.

First, merely threatening counterclaims (which the Clerk did not even do here) is not sufficient to constitute adverse action for purposes of retaliation. *See Smith v. Haynes*, 940 F.3d 635, 648 (11th Cir. 2019) (holding the defendant's discussion of possible counterclaims did not meet "the governing test for what constitutes adverse action"). Similarly, the Supreme Court "has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his

22

retaliation claim would 'plant the seed of a constitutional case' in 'virtually every' interchange." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)). Likewise, the Seventh Circuit has explained that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation . . . ." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).

Here, this litigation began when Mr. Warner sent an e-mail to the Clerk (through its counsel) accusing it of the criminal acts of "embezzling" funds from him and committing "theft." Doc. 1 ¶ 53; Doc. 11 ex. 1. Mr. Warner's initial e-mail demanded triple damages under the civil theft statute, Florida Statute § 772.11. Doc. 11 ex. 1. But the civil theft statute has a strong fee-shifting provision in favor of a successful defendant. Under it, a successful defendant "is entitled" to recover attorney fees (not simply "may") if the court finds the "claim was without substantial fact or legal support." Fla. Stat. § 772.11(1).

Again, Mr. Warner began this litigation by serving a demand letter accusing the Clerk of criminal conduct. Doc. 1 ¶ 53; Doc. 11 ex. 1. The Clerk's response letter was measured, outlining the legal deficiencies with Mr. Warner's claims. *See generally* Doc. 11 ex. 1; Doc. 1-2. The language with which Mr. Warner disagrees did <u>not</u> say he was going to face any extortion claims or charges. Rather, it was a gentle reminder that threatening to

23

accuse a person of criminal acts to obtain money is generally unacceptable behavior. *Id.* at 1. The response letter did <u>not</u> state the Clerk was considering any action because of the demand itself, but rather that if Mr. Warner proceeded with his "proposed lawsuit," it could "subject [him] to potential liabilities" in the form of a fee-shifting order, as contemplated by § 772.11(1).

Thus, Mr. Warner's retaliation claim fails as a matter of law because no adverse action occurred. Doc. 1-2. The Clerk's attorneys merely provided a mundane reminder that phrasing matters and notice of the potential for the Clerk to receive an award of its attorney's fees and costs. *Id.* The response did not even rise to the level of a threatened counterclaim, which, even then, would not be actionable. *See, e.g.*, *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-cv-23859, 2015 WL 2374594, at *14 (S.D. Fla. May 18, 2015) (finding a purported threat to countersue a "plaintiff for $300,000 was not [an] adverse action"). Moreover, Mr. Warner cannot demonstrate the response was tied to his exercise of speech. Rather, the language was clear that the Clerk might only seek a fee-shifting award under § 772.11(1) *if* he proceeded with his "proposed lawsuit" under the civil theft statute. *Id.*

Accordingly, the Court should enter judgment as a matter of law against Count V because the letter response to Mr. Warner's demand letter cannot constitute an adverse action.

## IV.   CONCLUSION

Mr. Warner's claims are unsupported and contrary to existing case law. This motion presents an opportunity to eliminate these unsupported claims before they can cause needless additional expenses for Hillsborough County, and the Clerk requests an order granting it judgment in this matter.

Respectfully submitted,

*/s/ Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December 2022, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

*/s/ Jason L. Margolin*

Counsel for Defendant