# United States District Court

## For The Middle District of Florida
## Tampa Division

Blake Warner

v.

Hillsborough County
Clerk of Courts

Case Number 8:22-CV-1977

# Plaintiff's Response to Defendant's Motion for Judgement on the Pleadings

(i)

# TABLE OF CONTENTS

I      Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

II     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III    Nit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV     Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

V      Counts I, II, and III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

1.     The Clerk did not comply with Florida Statute § 116.21  . . . . . . . . . . . .   3

       A.   Newspaper Requirements  . . . . . . . . . . . . . . . . . . . . . . . . .   3

       B.   Fla. Stat. § 50.011 Retroactive  . . . . . . . . . . . . . . . . . . . . . .   5

       C.   Hearsay  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

       D.   No Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

2.     A taking occurred  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

3.     Federal Constitutional Preemption . . . . . . . . . . . . . . . . . . . . . . . .   10

4.     Federal Common Law Preemption . . . . . . . . . . . . . . . . . . . . . . . . .   11

5.     Unclean Hands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

6.     Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

VI   Counts IV and V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1.   Defamation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   Publication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.   Falsity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.   Knowledge or Reckless Disregard . . . . . . . . . . . . . . . . . . . . . . 13

    D.   Presumed Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    E.   Defamatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2.   First Amendment Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3.   Litigation Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# I  Table of Authorities

Cases                                                                        Page

*Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*,
    1358 (Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ange v. State, 98 Fla. 538*, 123 So. 916 (1929) . . . . . . . . . . . . . . . . . . 15

*Arrow Air, Inc. v. Walsh, 645 So.2d 422*,  424 (Fla.1994) . . . . . . . . . 6

*Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016) . . . . . . . . . . . . . . . 15

*Basel v. McFarland Sons, Inc.*,
    815 So. 2d 687 (Fla. Dist. Ct. App. 2002). . . . . . . . . . . . . . . . . . 5

*City of Lakeland v. Catinella, 129 So.2d 133*, 136 (Fla.1961) . . . . . . . . . . . 5, 6

*City of Orlando v. Desjardins*, 493 So.2d 1027 (Fla.1986) . . . . . . . . . 6

*City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923) . . . . . . . . . . 7

*F.A.A. v. Cooper, 566 U.S. 284, 310, 132 S. Ct. 1441, 1459*,
    182 L. Ed. 2d 497 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367*,
    1370 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288,
    1297*, 194 L. Ed. 2d 414 (2016) . . . . . . . . . . . . . . . . . . . . . . . 11

*Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008). . . . . . . . . . . . . . 14

*LanChile Airlines v. Connecticut General Life Ins.*,
    731 F. Supp. 477 (S.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . 16

*Lawnwood Med. Ctr., Inc. v. Sadow, 43 So. 3d 710*,
    727 (Fla. Dist. Ct. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . 14

*Love v. State*, 286 So. 3d 177 (Fla. 2019) . . . . . . . . . . . . . . . . . . 6

*Pledger v. Burnup & Sims, Inc.*,
    432 So. 2d 1323 (Fla. Dist. Ct. App. 1983) . . . . . . . . . . . . . . . . 16

*Richard v. Gray*, 62 So. 2d 597 (Fla. 1953) . . . . . . . . . . . . . . . . . . 14

*Smiley v. State, 966 So. 2d 330*, 334 (Fla. 2007) . . . . . . . . . . . . . . . . 6

*Swerdloff v. Miami Nat'l Bank, 584 F.2d 54*, 57 (5th Cir.1978) . . . . . . . . . . 2

*Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626*,
    13 L. Ed. 2d 596 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cases—Continued                                                    Page

*U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805,
  811 n.4 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Constitutional Provisions, Statutes and Rules

18 United States Code

  § 242 "deprivation of civil rights under color of law" . . . . . . . . . . . . . 16

Federal Rules of Civil Procedure

  Rule 12(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

§ 116.21, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5, 10

§ 165.031, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§ 50.011, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

§ 50.031, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§ 772.11, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 83.232, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Other Authorities

## II  Introduction

*Plaintiff* Blake Warner, *pro se*, responds to *Defendant*'s Motion for Judgement on the Pleadings and states, and asks the Court to deny *Defendant*'s motion because:

1. It is premature as to counts I - III as there are *numerous* material factual disputes that cannot be resolved before discovery. Notably, the actual July 9, 2021 edition of La Gaceta at issue is not even a part of the record.

2. § 116.21, Fla. Stat. is preempted by the United States Constitution and Federal Common Law.

3. *Defendant* is estopped from raising many affirmative defenses for denying him a hearing to advance his case, under the doctrine of Unclean Hands.

4. Judgement for counts IV and V should be denied because the litigation privilege does not apply, the statements were published to third parties, and damages are presumed and do not need to be proven or plead in defamation *per se* or first amendment actions.

5. *Defendant*'s 12(c) motion introduces facts outside of the record, and thus should be converted to a Motion for Summary judgment pursuant Fed. R. Civ. P. Rule 12(d).

## III  Nit

*Defendant* stated that "This litigation stems from an eviction action filed against Mr. Warner ... Mr. Warner deposited his outstanding rent payments". D.E. 21 p. 2. *Defendant* cited D.E. 1 ¶ 6[1].

---

[1]"On May 10, 2018, that court ordered Plaintiff to deposit $1699.00 per month into the court registry"

1

No where does it say that *Plaintiff* ever had an outstanding rent balance. The underlying action was a contract dispute regarding the landlord illegally entering *Plaintiff*'s home without notice.  § 83.232, Fla. Stat.  requires the tenant to pay into the registry "any rent accruing during the pendency of the action, when due".

*Defendant*'s statements were not only misrepresentations, they were unnecessary, inflammatory, and defamatory.

## IV   STANDARD

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.". *see Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367*,  1370, . (11th Cir. 1998)

"When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. See Ortega, 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank, 584 F.2d 54*, 57, ) (5th Cir.1978)" *see Hawthorne v. Mac Adjustment*,  at .

"The complaint may not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' ". *see id*

## V   COUNTS I, II, AND III

*Defendant*'s claim that "Counts I, II, and III fail as a matter of law because: (1) the Clerk complied with Florida Statute § 116.21; (2) no taking occurred; (3) no duty was breached; and (4) Mr. Warner failed to timely bring his claim.". *see* MJOP D.E. 20 p

7.,

## 1. THE CLERK DID NOT COMPLY WITH FLORIDA STATUTE § 116.21

Whether the clerk complied with § 116.21, Fla. Stat. is a fact that is in dispute, and is therefore inappropriate for a 12(c) motion. The complaint repeatedly alleges that the Clerk did not comply with F.S. § 116.21. *see* Complaint ¶ 14 - 27.

The complaint alleges that the clerk "did not publish any unclaimed notices under *Plaintiff*'s name"[2]. *Defendant* published the court case's name: "BOUTIQUE APARTMENTS LLC,BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.113"[3]. Not only was it not published in *Plaintiff*'s name, but the list was sorted alphabetically by last name, and appears in the B's section, not the W's for *Plaintiff*'s surname. Therefore a diligent search of *Plaintiff*'s name would not find the case name entry.

### A. NEWSPAPER REQUIREMENTS

The clerk claims to resolve the disputed fact of whether La Gaceta is a "newspaper of general circulation" by erroneously citing the definition of "newspaper of general circulation" in § 165.031, Fla. Stat.. *Id*[4] clearly states that "The following terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section". § 116.21, Fla. Stat. is not in chapter 165.

Even if § 165.031, Fla. Stat. does apply, the Complaint alleges that the La

---

[2] *see* Complaint ¶ 12
[3] *see* MJOP D.E. 20 Exhibit I
[4] and then starts citing Alaska state courts for some reason?

3

Gaceta is not "printed in the language most commonly spoken in the area"[5], is not "readily available for purchase by all inhabitants in its area of circulation"[6], and "a newspaper the primary function of which is to carry legal notices"[7].

The complaint cites the correct statute–§ 50.031, Fla. Stat. –and then alleges that La Gaceta does not meet those requirements. *see* Complaint ¶ 26. *id* is titled "Newspapers in which legal notices and process may be published." and states: "no notice or publication required to be published ... shall be deemed to have been published in accordance with the statutes providing for such publication, unless the same ... meets the requirements set forth in s. 50.011".

The complaint repeatedly alleges that the clerk did not meet the requirements of § 50.011, Fla. Stat. :

1. "La Gaceta is only sold at two Wawa gas stations in Tampa."[8]

2. "La Gaceta is distributed and read by less than ten percent of the households in Hillsborough County."[9]. "La Gaceta's target audience is, and always has been, the Hispanic–Spanish speaking–population of Tampa"[10].

3. "La Gaceta does not meet the requirements of § 50.031, Fla. Stat. for a newspaper to be eligible to publish legal notices."[11].

---

[5] "Plaintiff is a non-Hispanic African-American male who cannot read or understand Spanish and lives in a neighborhood that is at least 90% non-Hispanic Caucasian. ". *see* Complaint ¶ 24.

[6] "A La Gaceta subscription cannot be purchased from it's website", "La Gaceta is only sold at two Wawa gas stations in Tampa". *see* Complaint ¶ 22-23

[7] "The current publisher of La Gaceta, Patrick Manteiga, stated in a March 2022 Tampa Bay Times article: 'So in the 1950s, we added English because we had to (to get legal advertising.)'.". *see* Complaint ¶ 17

[8] Complaint ¶ 23.

[9] Complaint ¶ 20.

[10] Complaint ¶ 16.

[11] Complaint ¶ 26.

4. "La Gaceta does not meet the "newspaper of general circulation" requirement of § 116.21, Fla. Stat. ."[12].

These are all disputed facts.

## B.   FLA. STAT. § 50.011 RETROACTIVE

On January 1, 2022–*before* the complaint was filed but *after* the clerk effected the publication of the notices–a new version of § 50.011, Fla. Stat. went into effect that–inter alia–added a sentence "Has an audience consisting of at least 10 percent of the households in the county or municipality ...". The previous version of the law(s) already imposed a duty that the newspaper must be in general circulation, the new law just clarified the definition and is thus a procedural change and remedial in nature.

"Substantive law prescribes duties and rights while procedural law concerns means and methods to apply and enforce those duties and rights". *see Basel v. McFarland Sons, Inc.*, 815 So. 2d 687, . (Fla. Dist. Ct. App. 2002).

"Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.". *City of Lakeland v. Catinella, 129 So.2d 133,* 136, . (Fla.1961) Here, the legislatures intent in clarifying requirements of the "general circulation" to cure deficiencies in the previous law are clearly remedial.

---

[12]Complaint ¶ 27.

"Moreover, the 'presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose.' *Arrow Air, Inc. v. Walsh, 645 So.2d 422*,   424, ( (Fla.1994) citing *City of Orlando v. Desjardins*, 493 So.2d 1027, ) (Fla.1986)". *see Smiley v. State, 966 So. 2d 330*,  334, . (Fla. 2007)

"Broadly speaking, substantive law is that which 'prescribes duties and rights,' while 'procedural law concerns the means and methods to apply and enforce those duties and rights.' *Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*,  1358, . (Fla. 1994) Amendments are procedural in nature if they 'do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing.' Smiley v. State, 966 So. 2d 330, 334 (Fla. 2007) (quoting *City of Lakeland v. Catinella*,  at ).". Quoting *Love v. State*, 286 So. 3d 177, . (Fla. 2019) Here, no new duties were imposed– only clarification of existing duties.

"The mere application of a new procedural statute in a pending case is not a retroactive application". *see id*

Additionally, the local government does not have constitutional rights, therefore due process cannot be violated by applying statutes retroactively.  "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations.  .  .  .  But such distinction furnishes no ground for the appli-

cation of constitutional restraints...".  Quoting *City of Trenton v. State of New Jersey*, 262 U.S. 182, . (1923)

Thus whether La Gaceta meets the 10 percent threshold in § 50.011, Fla. Stat. is a disputed issue of fact that needs discovery to resolve.

## C.  HEARSAY

*Defendant* correctly states "Notably, in deciding motions based on the pleadings, 'courts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).' *U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805*, 811 n.4, . (11th Cir. 2015)". *see* MJOP p. 10. Yet then–almost immediately after–tries to introduce inadmissible hearsay from newspaper articles from outside the record to assert the truth of the matter:

"La Gaceta is a well-recognized, tri-lingual weekly newspaper in Tampa. See Sue Carlton, For 100 years now, you simply had to read Tampa's La Gaceta newspaper, TAMPA BAY TIMES (Mar. 9, 2022)". https://www.tampabay.com/news/bu 100-years-now-you-simply-had-to-read-tampas-la-gaceta-newspaper/ ... La Gaceta, 'Our History' page, https://lagacetanewspaper.com/our-history/" *see* MJOP D.E 20 p. 12

Therefore, if the court is going to consider these materials, then *Plaintiff* requests that the court convert *Defendant*'s MJOP D.E. 20 to a Motion for Summary Judgement and give *Plaintiff* another opportunity to respond after the close of discovery, pursuant Fed. R. Civ. P. Rule 12(d).

## D.   No Notice

*Defendant* argues that "due process is satisfied as long as notice is given in a way reasonably designed to actually serve a party.. *see*, e.g., Dominguez v. United States Attorney General, 284 F.3d 1258, 1259 (11th Cir. 2002). ('Due process is satisfied so long as the method of notice is conducted 'in a manner 'reasonably calculated' to ensure that notice reaches the alien.')". *see* MJOP D.E. 20 pp. 12-13.

*Defendant* then argues that they served the notice to the *Plaintiff*'s last known address which they claim is the address *Plaintiff* filed on 6-22-2018. *see* MJOP D.E. 20 Exhibit E. However, the pleadings make clear that *Plaintiff* did update his address while the case was pending, and ceased once it was dismissed. *Plaintiff* has no duty to grave dig all of his old closed cases and file address change notices every time he moves.

Furthermore, if the court would take judicial notice of case numbers 18-TR-129797 and 19-CA-2966 (*see* attached) in the *Defendant's own court*, dated 12-24-2018 and 03-20-2019 (*after* the 6-22-2018 address change notice) which contain a different, more recent address, for the Plaintiff. The traffic citation address comes from *Plaintiff*'s drivers license, which the clerk clearly had access to at all times. These documents are only introduced to show that *Plaintiff*'s last known address is in dispute, and therefore cannot be resolved in a 12(c) motion.

*Plaintiff* further alleges in the complaint that his last known address was contained in the e-file account associated with the case the funds were attached

to (both physical address and email address), and that those addresses were not contacted.

*Plaintiff* also alleged that it was unreasonable for the clerk to not notify him via his e-file account because he had elected for e-service on that docket. *see* Complaint ¶ 36. It was shady for the clerk to publish the notice to the docket, without checking the box to serve him electronically via his e-file profile associated with the docket.

## 2.   A TAKING OCCURRED

The clerk argues that "The Fifth Amendment does not automatically apply every time a person forfeits his or her funds, but rather to cases involving eminent domain". Then cites "The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority".

This argument fails because the complaint argues that the funds were not lawfully seized. Specifically that there was no hearing or due process and is challenging the constitutionality of the law itself. The cases they cited are distinguished because those parties were challenging the results of a *hearing*. The Fifth amendment is clear that a taking is legal if it is done with due process, however the complaint clearly alleges that *Plaintiff* was never given due process.

### 3.   Federal Constitutional Preemption

To whatever extent that the clerk did comply with § 116.21, Fla. Stat. , that affirmative defense is preempted in counts I and II by the supremacy clause. The state cannot create affirmative defenses to federal constitutional rights because they inherently conflict: the state cannot simply declare a "complete release and discharge from any liability in connection with" a federal constitutional right.



"Put simply, federal law preempts contrary state law". *Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288, 1297*, 194 L. Ed. 2d 414, . (2016)

## 4.   FEDERAL COMMON LAW PREEMPTION

Federal common law holds that states can only escheat property when the creditor's last known address is within that state. *see Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626*, 13 L. Ed. 2d 596, . (1965)

The creditors in this case are the principals to the escrow account: Mr. Warner, BOUTQIUE APARTMENTS LLC, and Ms.  Darkes.  BOUTIQUE APARTMENTS LLC is a Michigan company, registered with the State of Florida with a Michigan address. *see* attached.  Therefore Florida is preempted from escheating the funds in the escrow account.

## 5.   UNCLEAN HANDS

As the eviction court record clearly shows, *Plaintiff* was denied many attempts to get a hearing to advance his case by *Defendant. Defendant* should be estopped from raising any affirmative defense regarding any delay in *Plaintiff* seeking to claim the funds when they violated his state and federal constitutional rights (due process, access to the courts, right to petition his government) then criticized him for not pursuing the avenue to relief that they actively prevented him from doing. *Defendant* denied him due process for years, and then dismissed his case.  That is bad faith, and should be estopped under the doctrine of Unclean Hands.

## 6.  DELAY

It is undisputed that the clerk escheated the funds in September 2021, and that *Plaintiff* began to seek reimbursement of those funds approximately six months later. This is not an unreasonable delay. For any delay related to waiting before the funds were escheated, there is no provision in the fifth or forteenth amendment that requires *Plaintiff* to seek his property within a proscribed amount of time. The Takings clause says "Nor shall private property be taken for public use, without just compensation." *not* "Nor shall private property be taken for public use, without just compensation except as it has been abandoned and the government needs money to fill COVID related budget deficits".

# VI   COUNTS IV AND V

## 1.  DEFAMATION

*Defendant* argues that *Plaintiff* failed to state a claim because he cannot satisfy each of the alleged elements of defamation: (1) publication of a statement, (2) falsity of the statement, (3) knowledge or reckless disregard by the defendant, (4) actual damages, and (5) the statement must be defamatory.

### A.  PUBLICATION

The complaint makes clear that "the attorney published these statements to an Akerman LLC partner and a paralegal.". The only privilege that was asserted here was litigation privilege, all other privileges are waived including any privilege related to publishing statements to co-workers.

## B. FALSITY

The statement at issue is "We trust it was not your intent to commit extortion". The statement clearly states the *Plaintiff* committed the infamous crime of extortion. It is *Plaintiff* 's position that he did not commit the crime of extortion, and thus the statement is false. *see* Complaint ¶ 54.

## C. KNOWLEDGE OR RECKLESS DISREGARD

*Plaintiff* plead that the author of the defamatory statements was a highly trained attorney, who should have know through his experience and training that the statements in the demand letter were not criminal extortion. *see* Complaint ¶ 57 - 59.

## D. PRESUMED DAMAGES

"Common-law defamation actions falling within the rubric of defamation per se allowed successful plaintiffs to recover 'general damages.' See Dobbs § 7.2, at 513; Doe, 540 U.S., at 621, 124 S.Ct. 1204. This stood in contrast to actions sounding in defamation per quod, which permitted recovery only if the plaintiff established 'special damages.' See Dobbs § 7.2, at 512; Doe, 540 U.S., at 625, 124 S.Ct. 1204.". Quoting *F.A.A. v. Cooper, 566 U.S. 284, 310, 132 S. Ct. 1441, 1459*, 182 L. Ed. 2d 497, . (2012)

"The wrongdoing here is slander per se. In Miami Herald Publishing Company v. Ane, 458 So.2d 239, 241 (Fla.1984), the court pointed out that "Florida's concern for individual reputation is reflected in article I, section 4, of the Florida Constitution." Florida has thus singled out defamation per se for special rules in civil tort litigation. In Montgomery v. Knox, 23 Fla. 595, 3 So. 211, 217

(1887), the court held that statements defamatory per se are presumed harmful as a matter of law.". Quoting *Lawnwood Med. Ctr., Inc. v. Sadow, 43 So. 3d 710*, 727, . (Fla. Dist. Ct. App. 2010)

Thus *Plaintiff* is not required to plead or prove special damages in a defamation per se action. The elements *Defendant* quoted from *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, a (Fla. 2008). re for defamation per quod and defamation by implication, *not* defamation per se.

### E.   DEFAMATORY

"A publication is libelous per se, or actionable per se, if, when considered alone, without innuendo, it charges that a person has committed an infamous crime; charges a person with having an infectious disease; tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or tends to injure one in his trade or profession.". Quoting *Richard v. Gray*, 62 So. 2d 597, . (Fla. 1953)

*Plaintiff* need not plead the statements as defamatory, they are presumed defamatory under Florida law because they accuse him of committing the infamous crime of extortion.

### 2.   FIRST AMENDMENT RETALIATION

*Defendant* asserts that the First Amendment Retaliation claim must fail because *Plaintiff* cannot show that her suffered an adverse action or that a causal relationship exists between the protected speech and the adverse action.

"Defendant adversely affects protected speech, as required to state a claim for retaliation under the First Amendment, if his alleged retaliatory conduct would

likely deter a person of ordinary firmness from the exercise of First Amendment rights...". Quoting *Bailey v. Wheeler*, 843 F.3d 473, . (11th Cir. 2016)

*Plaintiff* alleged "Plaintiff engaged in protected first amendment activity by sending Defendant, his government, a § 772.11, Fla. Stat.  legal demand for the return of funds they embezzled from him.".  *see* Complaint ¶ 63.  "In response, the government told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the statute.".  *see* Complaint ¶ 64.  "A person of ordinary firmness, would interpret this as a threat for criminal prosecution if Plaintiff followed through with his legal demand and initiated civil legal proceedings against Defendant".  *see* Complaint ¶ 65.

These allegations clearly establish a link between the protected activity and the government's adverse action.  And whether the alleged conduct is "likely deter a person of ordinary firmness from the exercise of First Amendment rights" is an question for the finder of fact, not a 12(c) motion.

## 3.  LITIGATION PRIVILEGE

"Some Florida cases examine whether alleged defamation which occurs before institution of judicial proceedings falls under the above-mentioned privilege.  In *Ange v. State, 98 Fla. 538*, 123 So. 916, , (1929) the Florida Supreme Court held that:

> "[t]his rule of privilege ... includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer.  This privilege extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." '

'. *see LanChile Airlines v. Connecticut General Life Ins.*, 731 F. Supp. 477, . (S.D. Fla. 1990)

Here, *Plaintiff* sent a statutorily authorized presuit notice to *Defendant* which is covered under the litigation privilege as it is a condition precedent to bringing a suit, however *Defendant*'s reply was not authorized by statute and was wholly unnecessary. *Defendant*'s statements were not necessarily preliminary thereto any litigation.

> "[T]he courts of Florida encourage pre-litigation settlement negotiations. It is in the interest of society to reach equitable and mutually satisfactory resolution of disputes without the necessity of suit….We hold that this policy reason is sufficiently enhanced, and the parties sufficiently protected, by the qualified privilege." *Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, . (Fla. Dist. Ct. App. 1983)

Thus at *best* their statements *might* be covered by qualified privilege (which they waived by not raising), but not absolute litigation privilege.

And finally, neither the litigation privilege nor qualified privilege apply to extortion/blackmail/18 U.S.C. § 242 "deprivation of civil rights under color of law" or other criminal conduct. Such criminal acts bear no relation to the underlying civil litigation, and are therefore not privileged. The statements at issue constitute extortion/blackmail/*Id* and are thus not privileged.

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to all counsel's of record via the CM/ECF system.

_____
12-16-2022

Date

_____
Signature

Blake Warner, *pro se*

3002 W Cleveland Street, #C8

Tampa, FL 33609

E-Service: BLAKE@NULL3D.COM

17