# United States District Court

## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER

v.

HILLSBOROUGH COUNTY
CLERK OF COURTS

Case Number 8:22-CV-1977

## PLAINTIFF'S VERIFIED MOTION FOR
## PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I    Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . .   v

II   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

III  Escheatment Defined . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV   Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

V    Affidavit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

VI   Undisputed Material Facts . . . . . . . . . . . . . . . . . . . . . . . .   2

VII  Count I: Due Process . . . . . . . . . . . . . . . . . . . . . . . . . .  10

1.   Facial Challenge to Fla. Stat. § 116.21 . . . . . . . . . . . . . . . . .  10

2.   Undelivered Letter Was Not Sufficient Notice . . . . . . . . . . . . .  11

3.   Contact Methods Available to Defendant: . . . . . . . . . . . . . . . .  13

     A.   Drivers License Address . . . . . . . . . . . . . . . . . . . .  13

     B.   E-File Electronic Service . . . . . . . . . . . . . . . . . . . .  13

     C.   E-File Profile Mailing Address, Phone Number, and Email  . . . . . . .  13

     D.   Mailing Address and Email Associated with Subsequent Court Filings   13

4.   Last Known Address . . . . . . . . . . . . . . . . . . . . . . . . . .  13

VIII Count II: Takings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.   Facial Challenge to Fla. Stat. § 116.21(4) . . . . . . . . . . . . . . . . . . 14

2.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IX Count V: First Amendment Retaliation . . . . . . . . . . . . . . . . . . . . 15

    A.   Probable Cause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.   Government Lacks A Reputation to Harm . . . . . . . . . . . . . . . . 17

    C.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X Affirmative Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1.   The Clerk did not comply with Florida Statute § 116.21 . . . . . . . . . . . 19

    A.   Federal Common Law Preemption . . . . . . . . . . . . . . . . . . . . 19

    B.   Federal Constitutional Preemption . . . . . . . . . . . . . . . . . . . 19

    C.   Newspaper Requirements . . . . . . . . . . . . . . . . . . . . . . . . 20

    D.   Fla. Stat. § 50.011 Retroactive . . . . . . . . . . . . . . . . . . . . . 20

2.   Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

3.   Clerk Did Not Comply With All Florida Laws . . . . . . . . . . . . . . . . 24

4.   Failure to State a Claim for Extortion . . . . . . . . . . . . . . . . . . . . 25

5.    Litigation Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

6.    Contracting Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

7.    Negligence  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

8.    Assumption of Risk - Abandonment . . . . . . . . . . . . . . . . . . . . . . 26

9.    Waiver - Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

10.   Speculative Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

11.   Publication or Retaliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

12.   Good Faith  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

13.   116.21 Condition Precedent  . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

14.   Failure to Update Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

XI    Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XII   Unsworn Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# I  Table of Authorities

Cases                                                                                    Page

*Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*,
1358 (Fla. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ange v. State, 98 Fla. 538*, 123 So. 916 (1929) . . . . . . . . . . . . . . . . . . 25

*Arrow Air, Inc. v. Walsh, 645 So.2d 422*,  424 (Fla.1994) . . . . . . . . . 21

*Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016) . . . . . . . . . . . . . . . 15

*Basel v. McFarland Sons, Inc.*,
815 So. 2d 687 (Fla. Dist. Ct. App. 2002). . . . . . . . . . . . . . . . . . 21

*CHOICE PLUS v. FINANCIAL SERVICES*,
244 So. 3d 343 (Fla. Dist. Ct. App. 2018). . . . . . . . . . . . . . . . . .  2

*City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789*,
798 n. 15 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Lakeland v. Catinella, 129 So.2d 133*, 136 (Fla.1961) . . . . . . . . . . 21, 22

*City of Orlando v. Desjardins*, 493 So.2d 1027 (Fla.1986) . . . . . . . . . . . . 21

*City of Trenton v. State of New Jersey*, 262 U.S. 182 (1923) . . . . . . . . . . . 22

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005). . . . . . . . . . . . . 20, 29, 31

*Delaware v. Pennsylvania*, 143 S. Ct. 696 (U.S. 2023). . . . . . . . . . . . . . .  1

*Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727*,
73 L. Ed. 2d 396 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288,
1297*, 194 L. Ed. 2d 414 (2016) . . . . . . . . . . . . . . . . . . . . . . 19, 31

*Jones v. Flowers*, 547 U.S. 220 (2006) . . . . . . . . . . . . . . . . . . . . . 11, 12

*Knick v. Tp. of Scott, Pennsylvania, 139 S. Ct. 2162, 204 L. Ed. 2d 558*,
588 U.S. (2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 30

*LanChile Airlines v. Connecticut General Life Ins.*,
731 F. Supp. 477 (S.D. Fla. 1990) . . . . . . . . . . . . . . . . . . . . . 25

*Love v. State*, 286 So. 3d 177 (Fla. 2019) . . . . . . . . . . . . . . . . . . . . 22

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

CASES—CONTINUED                                                    Page

*New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710*,
  11 L. Ed. 2d 686 (1964).  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Owen v. Independence, 445 U.S. 622, 100 S. Ct. 1398*,
  63 L. Ed. 2d 673 (1980).  . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

*Pledger v. Burnup & Sims, Inc.*,
  432 So. 2d 1323 (Fla. Dist. Ct. App. 1983)  . . . . . . . . . . . . . . . . . .  25

*Smiley v. State, 966 So. 2d 330*, 334 (Fla. 2007)  . . . . . . . . . . . . . . . .  21

*Stenehjem v. Sareen, 226 Cal. App. 4th 1405*,
  173 Cal. Rptr. 3d 173 (Ct. App. 2014). . . . . . . . . . . . . . . . . . . . .  18

*Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626*,
  13 L. Ed. 2d 596 (1965)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 19

*United States v. Salerno, 481 U.S. 739*, 745 (1987)  . . . . . . . . . . . . . . .  10

CONSTITUTIONAL PROVISIONS, STATUTES AND RULES

18 United States Code

 § 1951 "Hobbs Act"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

 § 242 "deprivation of civil rights under color of law"  . . . . . . . . . . . . .  26

§ 116.21, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

§ 50.011, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

§ 717.113, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

§ 772.11, Fla. Stat.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

OTHER AUTHORITIES

## II  INTRODUCTION

*Plaintiff* moves for summary judgment pursuant Rule 56(a) on Counts I, II, and V of the *complaint* for *only liability, equitable relief, and liquidated $3,600* just compensation *damages*. *Plaintiff* maintains the right to a jury trial for all issues not raised in this motion and all other damages.

This action is brought because *Defendant* escheated *Plaintiff*'s court registry funds with neither just compensation nor adequate notice/opportunity to be heard, and then threatened him with criminal prosecution when he asked for his money to be returned.

## III  ESCHEATMENT DEFINED

As an initial matter, it is important to recognize that the law is inconsistent in the definition of "escheatment". The U.S. Supreme Court defined it in *Texas v. New Jersey, 379 U.S. 674, 85 S. Ct. 626,* 13 L. Ed. 2d 596, a (1965) s the state acquiring *title/ownership* to abandoned property, then changed course in *Delaware v. Pennsylvania*, 143 S. Ct. 696, d (U.S. 2023). efining it as the state taking *custody* of abandoned property. Florida seems more consistent, in referring to the state acquiring ownership. *see* Fla. Stat. 732.107. The distinction is not insignificant: a custodian *merely* has the duty of care or supervision over the property in contrast to the owner having complete dominion it.

For the purposes of this brief, *escheatment* is the process by which the state claims and becomes the owner of the unclaimed property, and *custodial taking* is the process by which the state takes custody of unclaimed property with the duty to reunite it with it's owner. Most all state's unclaimed property laws deal with *custodial taking* not

*escheatment*, because they all generally recognize that escheatment is unconstitutional without just compensation.

One Florida Appellate Court dove into the distinction (recognizing that it is inappropriate for the state to escheat property where the owner cannot be located):

> "The Department's final order rejected Choice Plus's attempt to draw a 'semantic distinction' between escheated funds and unclaimed funds, finding it was a distinction without a difference in the context of this case. We disagree as the distinction is the difference under the facts of this case ... While section 732.107 funds may be unclaimed in a colloquial sense, the fact that they escheat to the State upon a determination of intestacy means that the funds are never without an identifiable or locatable owner like other forms of 'unclaimed' property in chapter 717." *see CHOICE PLUS v. FINANCIAL SERVICES*, 244 So. 3d 343 (Fla. Dist. Ct. App. 2018).

## IV  STANDARD

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## V  AFFIDAVIT

My name is Blake Warner. I am over the age of 18 years and not laboring under any disabilities. I have personal knowledge of many of the facts and matters below.

## VI  UNDISPUTED MATERIAL FACTS

### EVICTION ACTION

1. On May 10, 2018, *Plaintiff* was ordered by the court in *BOUTIQUE APART-MENTS LLC v Warner* (Fla. Hillsborough Cty. Ct. Apr. 25, 2018 Case No

18-cc-22377) to pay $1,699 per month into the court registry on the first day of every month. *see Defendant Response First RFA #1, Eviction Docket*D.E. 24.

2. BOUTIQUE APARTMENTS LLC's last known mailing address is 320 N. MAIN STREET, SUITE 200, ANN ARBOR, MI 48104. *see Boutique Apartments LLC Registration*

3. The court registry is an escrow account operated by *Defendant*. *see Defendant's Answer D.E. 11* ¶ 8.

4. On April 30, 2018, *Plaintiff* deposited $1,800–$101 more than ordered–into the court registry to cover May 2018 rent. *see Eviction Docket*D.E. 8, *Warner Affidavit #3.*

5. On May 24, 2018, *Plaintiff* deposited $1,800–$101 more than ordered–into the court registry to cover June 2018 rent. *see Eviction Docket*D.E. 32, *Warner Affidavit #4.*

6. On June 22, 2018, *Plaintiff* moved to 502 S Fremont Ave #1322, Tampa FL, 33606 (the "Freemont address"). *see Warner Affidavit #3, Warner Leases.*

7. On June 22, 2018, *Plaintiff* filed on the docket a notice of change of address, updating his current address to the *Fremont address*. *see Eviction Docket*D.E. 45.

8. On June 23, 2018, *Plaintiff* surrendered possession of the property at issue. *see Eviction Docket*D.E. 44, *Warner Affidavit #6.*

9. On August 24, 2018, the *Landlord* moved to have the court registry funds released to them. *see Eviction Docket*D.E. 51.

10. On October 9, 2018, a hearing was held on the *Landlord*'s motion to disburse the court registry funds, Mr. Warner's opposition to the motion to disburse the court registry funds, the *Landlord*'s motion to dismiss Mr. Warner's counterclaims, and the *Landlord*'s motion to dismiss Mr. Warner's third party complaint. *see Eviction Docket* D.E. 56.

11. The court denied in part and granted in part *Landlord*'s motion to dismiss Mr. Warner's counterclaims, denied *Landlord*'s motion to dismiss third party complaint, and directed the *Landlord* to submit a *proposed* order disbursing $3,398 to the *Landlord*. *see Eviction Docket* D.E. 56.

12. After the hearing, *Landlord* and *Plaintiff* entered into an agreement to abandon Mr Warner's remaining counter-claims and third party claims in exchange for the court registry funds. *see Warner Affidavit* #8.

13. The court never ordered the court registry funds to be dispersed. *see Eviction Docket* D.E. 56, *Eviction Docket* generally.

14. On May 17, 2019, *Plaintiff* moved to 3002 W Cleveland St #C8, Tampa FL 33609 (the "Cleveland address"). *see Warner Affidavit* #9.

15. Between February 24, 2020 and June 15, 2020, the Court received thirteen RETURNED MAIL notices addressed to *Plaintiff*'s prior address, the *Fremont address*. *see Eviction Docket* D.E. 61 - 66, 69 - 74, 75.

16. On June 12, 2020, the entire action was dismissed for lack of prosecution. *see Eviction Docket* D.E. 76.

4

17. On February 18, 2021, *Defendant* mailed a letter to *Plaintiff* using a prior address indicated on his last filed notice of change of address (the *Fremont address*), indicating that the unclaimed court registry funds would be sent to the State of Florida pursuant Fla. Stat. § 717.113 if a response and court order to disperse the funds was not received by April 21, 2021. *see Eviction Docket*D.E. 77.

18. *Defendant* published "BOUTIQUE APARTMENTS LLC,BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.113 $3,600.00" in the July 9, 2021 edition of La Gaceta. *see La Gaceta, July 9, 2021* pp. 22 .

19. *Defendant* escheated the court registry funds at issue on 9-1-2021, and posted the following message on the docket: "UNCLAIMED FUNDS DISPOSED PER FS 116.21, FUNDS FOREVER BARRED". *see Eviction Docket*D.E. 79.

20. The only attempts *Defendant* made to try to contact *Plaintiff* regarding the court registry funds was the before mentioned February 18, 2021 Fla. Stat. § 717.113 letter and the publication in the July 9, 2021 edition of La Gaceta. *see Defendant Response First RFI* #6.

21. The escheated funds were deposited in the county fine and forfeiture fund for public use. *see Defendant Response First RFI* #7.

22. *Defendant* had the ability to serve *Plaintiff* electronically via his e-file account. *see Defendant Response First RFI* #1, *Defendant Response First RFI* #2.

23. *Defendant* did not electronically serve *Plaintiff* with any of the entries it placed on the 18-CC-022377 docket, despite having the ability to do so. *see Defendant*

*Response First RFA* #1, *Defendant Response First RFI* #1, *Defendant Response First RFI* #2.

## La Gaceta

24. La Gaceta is a weekly newspaper. *see La Gaceta Dep.* 5:5-6, Jan. 30 2023, *La Gaceta Dep. Exhibits* generally, Jan. 30 2023.

25. La Gaceta targets the Latino community. *see La Gaceta Dep.* 5:19, Jan. 30 2023, *La Gaceta Dep.* 15:4-10,16:4-9, Sep. 8 2018, *La Gaceta Dep. Exhibits* generally, Jan. 30 2023.

26. Around 1955, La Gaceta successfully lobbied congress to pass a state law that allowed Spanish newspapers to carry legal advertisements for general circulation. It was called "The La Gaceta Act". *see La Gaceta Dep.* 92:9-20, Sep. 8 2018.

27. Approximately 60% to 80% of the newspaper contents is advertising. *see La Gaceta Dep.* 10:20-20:2, Jan. 30 2023.

28. The population of Hillsborough County Florida in 2021 was approximately 1,478,000. *see 2020 United States Census Hillsborough.*

29. The number of La Gaceta newspapers distributed to readers in Hillsborough County, Florida in July 2021 was between 2,127 and 3,000. *see La Gaceta Dep.* 10:4-11:6, Jan. 30 2023, *La Gaceta Dep. Exhibits* generally, Jan. 30 2023.

30. La Gaceta reached between approximately 0.14% and 0.20% of the residents of Hillsborough County, Florida in July 2021. *see* previous two facts (number

of distributed La Gaceta Editions divided by the population of Hillsborough County).

## E-FILE ACCOUNT

31. *Plaintiff* first registered for an e-file account on myflcourtaccess.com on April 28, 2018, setting his email address to blake@null3d.com , his phone number to 212-542-0055, and his mailing address to 6220 S. Kelly Rd Tampa FL 33611. *see Warner Affidavit* #11, *efile registration email*.

32. *Plaintiff* immediately associated this e-file account with *BOUTIQUE APART-MENTS LLC v Warner* (Fla. Hillsborough Cty. Ct. Apr. 25, 2018 Case No 18-cc-22377), and began filing documents on the docket as well as receiving electronic service via his e-file account. *see Warner Affidavit* #12, *efile eviction service*.

33. *Plaintiff* has never changed the email address or phone number on his e-file profile, and those remain his current email address and phone number to date, as valid means to contact him. *see Warner Affidavit* #13.

34. Searching *Plaintiff* 's name on *Defendant*'s website, https://hover.hillsclerk.com/html/cas returns multiple cases, including *State v Warner* (Fla. Hillsborough Cty. Ct. Dec. 24, 2018 Case No 18-TR-129797) and *Warner v City of Tampa* (Fla. Hillsborough Cir. Ct. Mar. 20, 2019 Case No 19-CA-002966). Both cases list *Plaintiff* 's address as 6220 S. Kelly Rd, Tampa FL, 33611, and his phone number as 212-542-0055. *see Warner Affidavit* #, https://hover.hillsclerk.com/html/case/c generally.

7

35. *Plaintiff*'s last known email address was blake@null3d.com. *see Warner Affidavit* #generally, *18-TR-129797 Docket* generally, *Eviction Docket* generally.

36. *Plaintiff*'s last known phone number was 212-542-0055. *see Warner Affidavit* #generally, *18-TR-129797 Docket* generally, *Eviction Docket* generally.

37. *Plaintiff*'s last known mailing address was 6220 S. Kelly Rd, Tampa FL 33611. *see Warner Affidavit* #generally, *18-TR-129797 Docket* generally.

## Mother's Address

38. From 2006 to present, the address associated with *Plaintiff*'s Florida drivers license has always been 6220 S. Kelly Rd, Tampa FL, 33611. *see Warner Affidavit* #, *Warner 2013 Drivers License*, *Warner 2021 Drivers License*, *18-TR-129797 Docket* D.E. 7, *Warner Affidavit* #15.

39. *Plaintiff*'s mother, Mary Warner, has continuously resided at 6220 S. Kelly Rd, Tampa FL 33611 from 2010 to present. She pays no property tax because she is homesteaded at that address and is a disabled military veteran. *see Warner Affidavit* #16, *Kelly Road Property Tax 2019*, *Kelly Road Property Tax 2019*.

40. *Plaintiff* promptly receives mail from Mary Warner that is delivered to her address in his name. *see Warner Affidavit* #15-19.

41. From 2017 to October 2022, *Plaintiff* almost exclusively used his mother's address as his mailing address to ensure that he received important mail despite moving frequently. *see Warner Affidavit* #18.

## Red Light Camera

42. On 9-23-2018, a vehicle registered to *Plaintiff* was caught on video committing a traffic infraction by a traffic camera. Approximately three months later, The City of Tampa mailed *Plaintiff* a uniform traffic citation to the *Kelly address* for a violation that occurred on 9-23-2018. *Plaintiff* received this mailed ticket. And the docket reflects this *Kelly address*. *see 18-TR-129797 Docket* generally.

43. *Defendant* Suspended, and then subsequently un-suspended *Plaintiff*'s drivers license after payment of the fine was made. *see 18-TR-129797 Docket* generally in D.E. 12 (A D6 is a drivers license suspension).

## Demand Letter

44. *Defendant* made statements to *Plaintiff* indicating the possibility that he could be criminally prosecuted to protect the clerk from the protect the *Defendant* from the possibility of *Plaintiff* filing a lawsuit against them. *see Defendant Response First RFI* #8-10.

45. The purpose *Defendant*'s statements to *Plaintiff* regarding criminal prosecution was intended to discourage *Plaintiff* from filing a lawsuit. *see Defendant Response First RFI* #8-10.

# VII   Count I: Due Process

## 1.   Facial Challenge to Fla. Stat. § 116.21

Generally, a statute is facially unconstitutional if there are "no set of circumstances exists under which the Act would be valid," *United States v. Salerno, 481 U.S. 739*, 745 (1987); *see also City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789*, 798 n. 15 (1984) (explaining that a statute is facially invalid when "every application of the statute created an impermissible risk of suppression of ideas").

§ 116.21, Fla. Stat. is unconstitutional because it facilitates the deprivation of private property solely through mere publication by notice in newspapers rather than notice to the last known address of the property owner.

Such notice by publication is not sufficient under the Fourteenth Amendment as a basis for adjudication depriving of substantial property rights known persons whose whereabouts are also known, since it is not impracticable to make serious efforts to notify them at least by ordinary mail to their addresses on record. *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). After all, notice by publication will almost never result in actual notice to the owner, except by pure luck.

The statutory notice by publication is only sufficient whose addresses are unknown since there are no other means of giving them notice which are both practicable and more effective. *see id.* As this law only applies to court registry cases, there is *always* a last known address associated with the court case so notice by publication is never sufficient.

When a State is required to give notice, it must do so through processes "reasonably calculated" to reach the property owner. *see id.* Because the seizure of private property is no small thing, notification procedures may not be empty rituals: "[P]rocess which is a mere gesture is not due process." *see id.*

The practical and intended effect of § 116.21, Fla. Stat. is an unconstitional taking through the combination of an extremely short escheatment period–as low as eighteen months–with minimal notification procedures.

As advances in technology make it easier and easier to identify and locate property owners, the state appears to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. The state has an obligation to return property when it's owner can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires.

*Id* (3) and (4) are unconstitutional on it's face because "upon such payment to the fine and forfeiture fund, the ... clerk shall be released and discharged from any and all further responsibility or liability in connection therewith" conflicts with a property owner's federal "right to compensation immediately upon an uncompensated taking because the taking itself violates the Fifth Amendment." *see Knick v. Tp. of Scott, Pennsylvania, 139 S. Ct. 2162, 204 L. Ed. 2d 558*, 588 U.S. (2019)..

## 2.   UNDELIVERED LETTER WAS NOT SUFFICIENT NOTICE

Notice is deemed constitutionally sufficient if it was reasonably calculated to reach the intended recipient. *see Jones v. Flowers*, 547 U.S. 220 (2006). The means

a State employs to provide notice "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.". *Mullane v. Central Hanover Bank*, 339 U.S. 306.  When a mailed notice is returned unclaimed, the state must take additional reasonable steps to attempt to provide notice to the property owner before escheating their property, if it is practicable to do so.  *see Jones v. Flowers*, 547 U.S. 220.

In the instant case, *Defendant*–undeterred by thirteen prior RETURNED MAIL notices addressed to *Plaintiff* at the *Fremont address*–sent a notice of intent to escheat the registry funds to... the *Fremont address*.  The only other attempt *Defendant* made to give notice to *Plaintiff* was publishing a notice, in the name of the eviction case style, in an obscure Spanish newspaper that less than 0.2% of the county population read.  Neither of these attempts were reasonably calculated to give notice to *Plaintiff*.

Additionally, the letter notice itself was deficient because it only gave notice of intent to remit the registry funds to the state's unclaimed property division pursuant § 717.113, Fla. Stat. , *not* § 116.21, Fla. Stat. .  The difference between the two statutes is immense in both the duration of the dormancy period and practical effect:  § 717.113, Fla. Stat.  is a *custodial taking* statute with a five year dormancy period where the state safeguards the property until the rightful owner can claim it in the future.  Had *Defendant* remitted the funds to the state as their letter indicated, *Plaintiff* could have just filed a claim with the state and received his funds, avoiding litigation all together.  But *Defendant* did not do what their letter indicated, they ultimately escheated the funds under § 116.21, Fla. Stat.  with an

12

aggressive dormancy period–as little as eighteen months–with no notice which escheats the funds to the county fine and forfeiture fund and forever bars the owner from reclaiming it if they fail to act within a brief publication window.

## 3.   CONTACT METHODS AVAILABLE TO DEFENDANT:

   A.   DRIVERS LICENSE ADDRESS

   B.   E-FILE ELECTRONIC SERVICE

   C.   E-FILE PROFILE MAILING ADDRESS, PHONE NUMBER, AND EMAIL

   D.   MAILING ADDRESS AND EMAIL ASSOCIATED WITH SUBSEQUENT COURT FILINGS

## 4.   LAST KNOWN ADDRESS

*Defendant* knew exactly how to locate and give notice to *Plaintiff* when he owed the government money[1], but they suddenly became retarded when it came to giving notice to *Plaintiff* when they owe him money. *see Defendant Response First RFI* #1-7.

*Defendant* not had a duty to take reasonable steps to contact *Plaintiff*, under the due process clause, but they also owed *Plaintiff* a duty of care as the agent of the escrow account to perform an even more exacting search for *Plaintiff* than minimum due process requires. *Defendant* fell woefully short of these obligations due to their desire to engage in self-dealing by escheating the money that they had been entrusted to safeguard.  They had the ability to serve him via his e-file

---

[1] *see 18-TR-129797 Docket* generally.

account, the *Kelly address*, his phone number, his email address, and the refused to try to contact him using *any* of those methods, and instead chose to use the address associated with an old eviction action that they knew *Plaintiff* did not reside at.

# VIII   COUNT II: TAKINGS CLAUSE

"[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." Tahoe–Sierra Preservation Council, Inc.  v.  Tahoe Regional Planning Agency, 535 U.S. 302, 324 (2002).

"a reasonable, certain and adequate provision for obtaining compensation [must] exist at the time of the taking." Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985).

"[t]he owner is to be put in as good [a] position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 373 (1943)

## 1.   FACIAL CHALLENGE TO FLA. STAT. § 116.21(4)

The statute explicitly forbids *just compensation* after the taking has occurred "Upon such payment to the fine and forfeiture fund, the sheriff or clerk shall be released and discharged from any and all further responsibility or liability in connection therewith."

Immediately after the taking ("Upon such payment to the fine and forfeiture fund"), *just compensation* is explicitly denied (the "clerk shall be released and discharged from any and all further responsibility or liability in connection there-

14

with.").  The statute expressly authorizes a taking (which is fine), but then immediately denies *just compensation* (not fine) in violation of the takings clause. Every application of the statute is a violation of the takings clause.

Unless an owner is dead or presumed dead, it is *never* constitutional to deny him *just compensation* after a taking has occurred no matter how long the dormancy period.

## 2.  ARGUMENT

*Defendant* escheated *Plaintiff*'s court registry funds into the county fine and forfeiture fund for public use, without due process (as addressed in Count I), and then refused to provide just compensation to *Plaintiff* for use of his property.

# IX   COUNT V: FIRST AMENDMENT RETALIATION

"Defendant adversely affects protected speech, as required to state a claim for retaliation under the First Amendment, if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights...". Quoting *Bailey v. Wheeler*, 843 F.3d 473, . (11th Cir. 2016)

*Plaintiff* engaged in protected first amendment activity by sending Defendant, his government, a § 772.11, Fla. Stat.  legal demand for the return of funds they embezzled from his court escrow account. In response, *Defendant* told him that demanding his escrow funds through a statutorily authorized legal demand letter was criminal extortion and cited the criminal statute. A person of ordinary firmness, would interpret this as a veiled threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*.

## A.   PROBABLE CAUSE

In Hartman v. Moore, the Supreme Court held that a plaintiff pursuing a First Amendment retaliatory prosecution claim must prove that the defendant lacked probable cause to bring the criminal charges. While *Plaintiff* asserts that proving lack of probable cause is not required in the instant case because there was no actual prosecution. The reason it is required in retaliation for *actual* criminal prosecution is because the prosecutors are not sued in those cases due to absolute immunity, plaintiff's instead must sue someone like an investigator and then allege and prove complex causation chain based on the theory that the investigator induced the prosecutor to bring charges.

In the instant case, we do not have a prosecutor or criminal case. Nonetheless, "Demonstrating that there was no probable cause for the [alleged] criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for ... the prosecution ... This alone does not mean, of course, that a ... § 1983 plaintiff should be required to plead and prove no probable cause, but it does mean that litigating probable cause will be highly likely in any retaliatory-prosecution case, owing to its powerful evidentiary significance".

The record is clear that *Plaintiff* only threatened to litigate in his demand letter, and threatening to litigate alone is not extortion. *see* United States v. Pendergraft, 297 F.3d 1198, 1207 (11th Cir. 2002) (holding that threating to litigate, even if made in bad faith, was not a violation of the Hobbs Act).

Additionally, *Defendant*'s cannot plead or prove the required element of

malice, because as they concede in their response, the demand letter was a statutorily *mandated* condition precedent to bringing a claim under that statute, and the statute itself requires an allegation of the criminal activity *Defendant* complains of as an element of that cause of action.

### B.   GOVERNMENT LACKS A REPUTATION TO HARM

*Defendant* predicates their extortion allegation on "Mr. Warner outright accus[ing] the Clerk of being a criminal". This is simply an allegation that *Plaintiff* was threatening to inflict reputation harm upon the *Defendant*. However government entities lack a reputation, therefore they cannot be libeled or extorted. *see* City of Philadelphia v. Washington Post Co., 482 F. Supp. 897, 898-99 (E.D. Pa. 1979) ("The City cannot maintain an action for libel on its own behalf. A governmental entity is incapable of being libeled."). Accord Edgartown Police Patrolmen's Ass'n v. Johnson, 522 F. Supp. 1149 (D. Mass. 1981) ("It is well-established that a governmental body may not sue for libel.").

"no court of last resort in this country has ever held, or even suggested, that prosecutions for libel on government have any place in the American system of jurisprudence.". *New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710*, 11 L. Ed. 2d 686, q (1964). uoting City of Chicago v. Tribune Co., 307 Ill. 595, 601, 139 N.E.

And even if the government does have a reputation that can be harmed, the first amendment precludes any sort of criminal prosecution based on "bad things" Mr. Warner might say about them.

## C.  ARGUMENT

If threatening to file litigation in a demand letter was criminal extortion, we would have to arrest the entire Florida Bar.  Mr.  Warner did not threaten to report *Defendant* to any third parties.  The letter was sent to skilled attorneys, who absolutely know through their skill and training, that that isn't even close to criminal extortion.  A layman may get that wrong, but there is no question a member of the Florida bar knows better.  As far as demand letters go, that letter was so vanilla it was missionary.

A California Appellate Court faced a similar situation in *Stenehjem v. Sareen, 226 Cal. App. 4th 1405*, 173 Cal. Rptr. 3d 173, a (Ct. App. 2014). nd held that veiled threats to report criminal activity to third parties in a demand letter can still can constitute extortion as a matter of law.  "Stenehjem's threats may have been 'veiled' . . . does not disguise their essential character as extortion". *Id.* .

In the instant case, *Defendant*'s veiled threats of criminal prosecution for filing a lawsuit would chill an person of ordinary firmness from filing that lawsuit.  It is important to stress that the threat of prosecution–veiled or otherwise–carries significantly more weight when it comes from the clerk of the court who would oversee that prosecution.

# X   AFFIRMATIVE DEFENSES

## 1.   THE CLERK DID NOT COMPLY WITH FLORIDA STATUTE § 116.21

### A.   FEDERAL COMMON LAW PREEMPTION

Federal common law holds that states can only escheat property when the creditor's last known address is within that state. *see Texas v. New Jersey*, 13 L. Ed. 2d at .

   The creditors in this case are the principals to the escrow account: *Plaintiff* and BOUTQIUE APARTMENTS LLC. BOUTIQUE APARTMENTS LLC is a Michigan company, registered with the State of Florida with a Michigan address. There was no court order dispursing the funds. Therefore Florida is preempted from escheating the funds in the escrow account, because the *Landlord* had an interest in the funds and their last known address was a Michighan address.

### B.   FEDERAL CONSTITUTIONAL PREEMPTION

To whatever extent that *Defendant* did comply with § 116.21, Fla. Stat. , that affirmative defense is preempted in counts I and II by the supremacy clause. The state cannot create affirmative defenses to federal constitutional rights because they inherently conflict: the state cannot simply declare a "complete release and discharge from any liability in connection with" a federal constitutional right.  "Put simply, federal law preempts contrary state law". *Hughes v. Talen Energy Mktg., LLC, 578 U.S. 150, 162, 136 S. Ct. 1288, 1297*, 194 L. Ed. 2d 414, . (2016)

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005)..

*Defendant* published the court case's name: "BOUTIQUE APARTMENTS LLC, BROOKLYN FLATS VS WARNER, BLAKE 18-CC-022377 05/24/2018 *717.113"[2]. Not only was it not published in *Plaintiff*'s name, but the list was sorted alphabetically by last name, and appears in the B's section, not the W's for *Plaintiff*'s surname. Therefore a diligent search of *Plaintiff*'s name would not find the case name entry.

## C.   Newspaper Requirements

*Defendant* did not meet the requirements of § 50.011, Fla. Stat. because it published the notice in a newspaper that has an audience of less than one percent of the households in Hillsborough County, and is not a 'newspaper of general circulation'.

## D.   Fla. Stat. § 50.011 Retroactive

On January 1, 2022–*before* the complaint was filed but *after* the clerk effected the publication of the notices–a new version of *Id* went into effect that–inter alia–added a sentence "Has an audience consisting of at least 10 percent of the households in the county or municipality ...". The previous version of the law(s) already imposed a duty that the newspaper must be in general circulation, the new law just clarified the definition and is thus a procedural change

---

[2]*see* MJOP D.E. 20 Exhibit I

and remedial in nature.

"Substantive law prescribes duties and rights while procedural law concerns means and methods to apply and enforce those duties and rights". *see Basel v. McFarland Sons, Inc.*, 815 So. 2d 687, . (Fla. Dist. Ct. App. 2002).

"Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.". *City of Lakeland v. Catinella, 129 So.2d 133*, 136, . (Fla.1961) Here, the legislatures intent in clarifying requirements of the "general circulation" to cure deficiencies in the previous law are clearly remedial.

"Moreover, the 'presumption in favor of prospective application generally does not apply to 'remedial' legislation; rather, whenever possible, such legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose.' *Arrow Air, Inc. v. Walsh, 645 So.2d 422*, 424, ( (Fla.1994) citing *City of Orlando v. Desjardins*, 493 So.2d 1027, ) (Fla.1986)". *see Smiley v. State, 966 So. 2d 330*, 334, . (Fla. 2007)

"Broadly speaking, substantive law is that which 'prescribes duties and rights,' while 'procedural law concerns the means and methods to apply and enforce those duties and rights.' *Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352*, 1358, . (Fla. 1994) Amendments are procedural in nature if they 'do not create new or take away vested rights, but only operate in furtherance of

the remedy or confirmation of rights already existing.' Smiley v. State, 966 So. 2d 330, 334 (Fla. 2007) (quoting *City of Lakeland v. Catinella*, at ).". Quoting *Love v. State*, 286 So. 3d 177, . (Fla. 2019) Here, no new duties were imposed– only clarification of existing duties.

"The mere application of a new procedural statute in a pending case is not a retroactive application". *see id*

Additionally, the local government does not have constitutional rights, therefore due process cannot be violated by applying statutes retroactively. "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law of municipal corporations. . . . But such distinction furnishes no ground for the application of constitutional restraints...". Quoting *City of Trenton v. State of New Jersey*, 262 U.S. 182, . (1923)

## 2.  LACHES

Generally, for laches to apply, "the defendant must prove: (1) conduct by the defendant that gives rise to the complaint; (2) that the plaintiff had knowledge of the defendant's conduct and did not assert the opportunity to institute suit; (3) lack of knowledge by the defendant that the plaintiff will assert the right upon which suit is based; and (4) extraordinary injury or prejudice." Ticktin, 807 So. 2d at 664. "Laches is a defense requiring proof of lack of diligence by the party against whom the defense is asserted, and prejudice to the party asserting the defense."

Francis v. State, 31 So. 3d 285, 287 (Fla. 4th DCA 2010).

"Delay alone in asserting a right does not constitute laches, and the burden is on the party who asserts the doctrine of laches to prove prejudice." Ticktin, 807 So. 2d at 663 (emphasis added). "In determining whether delay constitutes a bar to a claim, the court must look to whether the delay has resulted in injury, embarrassment or disadvantage to any person, and particularly to the person against whom relief is sought, whether the delay has been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and whether, during the delay, there has occurred a change in conditions that would render it inequitable to enforce the right asserted." Brumby v. Brumby, 647 So. 2d 330, 331 (Fla. 4th DCA 1994).

*Defendant* did not, and can not plead or prove prejudice in the "delay" because no material witnesses have become unavailable, no evidence has been lost, and the claims were brought within the statute of limitations. *Defendant* actually *benefits* from a delay in the form of an interest free loan on the court regstry funds at issue.

Furthermore, there was no unreasonable delay: the causes of action accrued when *Defendant* escheated the court registry funds on 9-1-2021, *Plaintiff* engaged in informal ways to resolve the dispute on 4-1-2022, and then brought this suit just shy of one year after the escheatment on 08-29-2022, within all applicable statute of limitations.

Finally, The United States Supreme Court has held "that insofar as a copyright claim seeks damages, a court cannot ever apply laches, irrespective of the length of the plaintiff's delay, the amount of the harm that it caused, or the inequity of

permitting the action to go forward.". Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014). The court then extended this preclusion to Patent cases in SCA HYGIENE v. First Quality Baby Products, 137 S. Ct. 954, 580 U.S. 328, 197 L. Ed. 2d 292 (2017). The defense of laches make a lot more sense in the context of copyright and patents as those are often in effect for decades and the infringement with the statute of limitations constantly resetting with ongoing violations. Yet the supreme court still precluded it's application. The instant case is much simpler: there is no equitable tolling, there is only one discrete violation instead of a series of compounding violations, and the claims were brought well within the statute of limitations.

"This Court has cautioned against invoking laches to bar legal relief. See, e.g., Holmberg v. Armbrecht, 327 U.S. 392, 395, 396, 66 S.Ct. 582, 90 L.Ed. 743. Pp. 1972-1974. Quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014).

### 3.   CLERK DID NOT COMPLY WITH ALL FLORIDA LAWS

No response is due for this defense because the clerk generally generally alleges that they "fully complied with any and all applicable Florida laws", however they failed to identify any specific laws (other than Fla. Stat. § 116.21) or allege any facts. To the extent they raise compliance with Fla. Stat. § 116.21 as an affirmative defense, this is duplicative of their first defense and *Plaintiff* restates his responses to the first affirmative defense here.

## 4.  FAILURE TO STATE A CLAIM FOR EXTORTION

Addressed in Count V above.

## 5.  LITIGATION PRIVILEGE

"Some Florida cases examine whether alleged defamation which occurs before institution of judicial proceedings falls under the above-mentioned privilege.  In *Ange v. State, 98 Fla. 538*, 123 So. 916, , (1929) the Florida Supreme Court held that:

> "[t]his rule of privilege ... includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer.  This privilege extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." '

'. *see LanChile Airlines v. Connecticut General Life Ins.*, 731 F. Supp. 477, . (S.D. Fla. 1990)

Here, *Plaintiff* sent a statutorily authorized presuit notice to *Defendant* which is covered under the litigation privilege as it is a condition precedent to bringing a suit, however *Defendant*'s reply was not authorized by statute and was wholly unnecessary.  *Defendant*'s statements were not necessarily preliminary thereto any litigation.

> "[T]he courts of Florida encourage pre-litigation settlement negotiations. It is in the interest of society to reach equitable and mutually satisfactory resolution of disputes without the necessity of suit….We hold that this policy reason is sufficiently enhanced, and the parties sufficiently protected, by the qualified privilege." *Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, . (Fla. Dist. Ct. App. 1983)

Thus at *best* their statements *might* be covered by qualified privilege (which they waived by not raising), but not absolute litigation privilege.

And finally, neither the litigation privilege nor qualified privilege apply to extortion/blackmail/18 U.S.C. § 242 "deprivation of civil rights under color of law", *Id.* § 1951 "Hobbs Act", or other criminal conduct.  Such criminal acts bear no relation to the underlying civil litigation, and are therefore not privileged.  The statements at issue constitute extortion/blackmail/deprivation of civil rights under color of law and are thus not privileged.

## 6.   CONTRACTING CLAIMS

This is not an affirmative defense, it is a general denial of the elements that *Plaintiff* must prove to win his case.

## 7.   NEGLIGENCE

Florida law only allows comparative negligence in negligence torts. *see* Fla. Stat. 768.81.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Founders Bank, Plaintiff, v. CHICAGO TITLE INSURANCE COMPANY, et al., Defendants. No. 12-cv-05198

## 8.   ASSUMPTION OF RISK - ABANDONMENT

"'abandonment' as applied to property and property rights has long had a generally accepted and a well defined and technical meaning. St. Peter's Church v. Bragaw,144 N.C. 126, 56 S.E. 688 (1970). What constitutes an 'abandonment' as relates to property has been defined by the Fifth Circuit and other courts. 'There must be a voluntary intention to abandon, or evi-

dence from which such intention may be presumed.' The No. 105, Belcher Oil Co. v. Griffin,97 F.2d 425, 426 (5th Cir. 1938); Mason v. Hasso,90 Ariz. 126, 367 P.2d 1 (1961); Commonwealth v. Koontz, 258 Pa. 64, 101 A. 863 (1917). Abandonment is always voluntary and involves a positive intention to part with ownership. McIver v. Norman,187 Or. 516, 527, 213 P.2d 144 (1949). It is essential that the owner act without coercion or pressure. Manello v. Bornstine,44 Wn.2d 769, 270 P.2d 1059 (1954); Huffman v. Smyth, 47 Or. 573, 84 P. 80 (1906). The doctrine of abandonment has no application unless there is a total desertion by the owner without being pressed by any necessity, duty, or utility to himself, but simply because he no longer desires to possess the thing and willingly abandons it to whoever wishes to possess it." Quoting Katsaris v. United States, 684 F.2d 758, 761-62 (11th Cir. 1982)

Here, *Defendant* can identify no affirmative actions that *Plaintiff* took to indicate intent to abandon the funds. The mere absence of action is not enough to infer abandonment.

Assuming, *arguendo*, that *Plaintiff* did abandon the funds, minimum due process still demands adequate notice and opportunity to be heard, which *Defendant* did not provide as outlined elsewhere in this brief. A lack of due process is fatal to this affirmative defense.

## 9.   WAIVER - ABANDONMENT

"Waiver" is the voluntary and intentional relinquishment of a known right. Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla. 2005); Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v. Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007). The elements necessary to establish waiver are: the existence of a right, privilege, or advantage; the actual or constructive knowledge thereof; and an intention to relinquish that right, privilege, or advantage. Bueno v. Workman, 20 So.3d 993, 998 (Fla. 4th DCA 2009); Winans v.

Weber, 979 So.2d 269, 274 (Fla. 2d DCA 2007).

This affirmative defense is largely duplicative of the previous defense, and *Plaintiff* restates and incorporates that response here.

Here, *Defendant* can identify no affirmative actions that *Plaintiff* took to indicate intent to abandon the funds.  The mere absence of action is not enough to infer abandonment.

## 10.   SPECULATIVE DAMAGES

Asserting that the claimed damages are speculative, vague, or even non-existent does not constitute an affirmative defense. Manley v. Boat/U.S. Inc., No. 13-5551, 2016 U.S. Dist. LEXIS 41036, *14 (N.D. Ill. Mar. 29, 2016) ("simply accusing [a plaintiff] of pleading vague and speculative damages does not state an affirmative defense"); Varrasso v. Barksdale, No. 13-1982, 2016 U.S. Dist. LEXIS 46686, *7-8 (S.D. Cal. Apr. 5, 2016) (affirmative defense that plaintiffs' damages are "speculative or nonexistent . . . are simply allegations that Plaintiffs did not meet their burden of proof . . . [so] they are not affirmative defenses"); Joe Hand Promotions, Inc. v. Kurti, No. 14-1277, 2015 U.S. Dist. LEXIS 120170, *2 (C.D. Cal. Sept. 8, 2015) (11speculative damages[] is a defense to damages, not an affirmative defense")

## 11.   PUBLICATION OR RETALIATION

This is just a reworded duplication of the fourth affirmative defense "failure to state a claim".

28

## 12.   GOOD FAITH

"Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by the defendant [government] official." *Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727*, 73 L. Ed. 2d 396 (1982).. The Supreme Court has acknowledged that the "good faith" defense for a public official charged with a violation of 42 U.S.C. § 1983 has both an objective and subjective element. *Id.* Qualified immunity only applies to civil damages, not equitable relief, and it only applies to individuals sued in their individual capacity. *see id.* Local government defendants–such as *Defendant*–are not entitled to qualified immunity. *see Owen v. Independence, 445 U.S. 622, 100 S. Ct. 1398*, 63 L. Ed. 2d 673 (1980)..

As outlined previously, sending notice to an address that *Defendant* had previously received thirteen returned mail notices from is not good faith, and neither is publishing a notice in a Spanish newspaper read by less than 0.2% of the population. Especially when *Defendant* had other reasonable ways to contact *Plaintiff* but chose not to even *attempt* to effectuate notice through them.

Minimum due process notice and hearings requirements in the context of the takings clause has been clearly establish federal law for decades.

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208.

Finally, *just compensation* under the takings clause is not retrospective damages, it is prospective equitable relief. The original property taken, and the just compensation are not the same thing or even the same value. *Plaintiff* is suing for

just compensation, not the original funds. Just compensation is just the fair market value of the property at the time it was taken, so it could be higher or lower than the original value of the property. With intangible money, the value only goes higher due to inflation and/or interest accruing. Qualified immunity does not apply to equitable relief.

### 13.   116.21 Condition Precedent

Fla. Stat. § 116.21(3) and (4) are not conditions precedent, those words appear no where in the statute, and the statute is mute as to any requirements that must occur before a civil action is brought. Quite the opposite, the statute explicitly states that you cannot sue the clerk *at all* after the taking occurs. To accept this defense would have the practical effect of granting the state absolute immunity from all takings claims, because that "condition precedent" can only be performed *before* the taking occurred, however a takings claim is not ripe until *after* that taking has occurred. This outcome is even more egregious in light of the statute's inadequate notice procedures. This is an affront to due process and common sense.

*Plaintiff* is not required to exhaust state remedies before bringing a takings claim to federal court. *see Knick v. Township of Scott Pennsylvania*, 588 U.S.. "This Court has long recognized that property owners may bring Fifth Amendment claims for compensation as soon as their property has been taken, regardless of any other post-taking remedies that may be available to the property owner.". *see id.*

To whatever extent § 116.21, Fla. Stat.  (3) and (4) might apply, that affirmative

30

defense is preempted in counts I and II by the supremacy clause.  The state cannot create affirmative defenses to federal constitutional rights because they inherently conflict: the state cannot simply procedurally declare a "complete release and discharge from any liability in connection with" a federal constitutional right.  "Put simply, federal law preempts contrary state law".  *Hughes v. Talen Energy Mktg.*, 194 L. Ed. 2d at .

A municipality could be liable under § 1983 for enforcing an unconstitutional policy, even though the policy was consistent with a Florida statute, because the statute itself was unconstitutional. *see Cooper v. Dillon*, 403 F.3d 1208.

## 14.   FAILURE TO UPDATE ADDRESS

This defense is preempted by the supremacy clause in Counts I and II, because it conflicts with federal law.  State law cannot lower minimum due process requirements below federal requirements, and there is no affirmative duty under federal law for *Plaintiff* to continuously update his address in an old eviction court cases. The burden is locate property owners is *Defendant*'s to bear under federal law, and state law cannot invert that.  Especially when *Defendant* had other reasonable ways to contact *Plaintiff* but chose not to even *attempt* to effectuate notice through them.

Furthermore, *Plaintiff* did continuously update and provide a valid mailing address on his e-file account.  It is unreasonable to expect *Plaintiff* to grave dig all of his old closed cases to post notice of address changes to those dockets.  *Plaintiff* acted in good faith by keeping his e-file profile up-t-date.  *Defendant* was incompe-

tent by not having procedures in place to automatically update and/or sync court doccket party contact information with their respective e-file accounts. When *Plaintiff* updated his federal PACER account contact information, his other cases addresses were automatically updated.

# XI  CONCLUSION

WHEREFORE, *Plaintiff* respectfully requests that this court enter judgment for:

1. Declaration that *Defendant* has violated *Plaintiff*'s constitutional rights by taking his property for public use without just compensation;

2. Declaration that Fla. Stat. § 116.21 is unconstitutional as applied and/or on it's face;

3. Award *Plaintiff* $3,600 in liquidated just compensation for the taking of his court registry funds;

4. Declaration that *Defendant* has violated *Plaintiff*'s constitutional first amendment rights;

5. Grant such other and further relief as is just and appropriate.

## XII  UNSWORN DECLARATION

I declare under penalty of perjury that the foregoing and attached is true and correct.

Executed on:

6-10-2023
_____
Date

_____
Signature

Blake Warner, *pro se*

2211 S Village Ave

Tampa, FL 33612

E-Service: BLAKE@NULL3D.COM