## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BLAKE WARNER,

     Plaintiff,

v.                          Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY       **Dispositive Motion**
CLERK OF COURTS,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Hillsborough County Clerk of Court (the "Clerk") moves for summary judgment.[1]

## I.    INTRODUCTION

Plaintiff Blake Warner failed to timely seek funds deposited in his eviction case, styled *Boutique Apartments LLC v. Warner*, Hillsborough County Court Case No. 18-CC-022377 (the "Eviction Case"). After nearly three years of inaction, the funds were forfeited by statute. Now, Mr. Warner brings a variety of meritless claims against the Clerk alleging damages. But each claim fails as a matter of law.

---

[1] The Clerk maintains its motion for judgment on the pleadings (Doc. 21) should be granted, but files this motion for summary judgment to comply with the Court's dispositive motion deadline and to include additional record evidence developed since the prior filing.

The parties have filed a joint statement of undisputed facts (Doc. #36) ("JSOF"), which is cited as "JSOF ¶ [#]."

## II.   UNDISPUTED STATEMENT OF MATERIAL FACTS

1.     In the Eviction Case,[2] on May 10, 2018, Mr. Warner was ordered to deposit money into the county court registry. (JSOF ¶¶ 2-4; Doc. 33, VI.1[3]).

2.     By the end of May 2018, Mr. Warner had deposited $3,600 with the county court. (JSOF ¶¶ 2-4; Doc. 33, VI.4-5).

3.     Mr. Warner moved to 502 S. Fremont Ave. #1322, Tampa, FL 33606 (the "Fremont Address") on June 22, 2018 and filed a notice of change of address in the Eviction Case. (JSOF ¶¶ 5-7; Doc. 33, VI.6-7).

4.     In the Eviction Case, the county court determined Mr. Warner's **landlord** was entitled to the deposited funds and requested a proposed order directing disbursement to the landlord. (JSOF ¶ 12, Ex. C; Doc. 33, VI.11).

5.     Mr. Warner claims he subsequently entered into an agreement with his landlord for the funds. (JSOF ¶ 13; Doc. 33, VI.12). No record of this agreement was filed in the Eviction Case. (*See* 33-1, the Eviction Case Docket).

---

[2]     The Court may take judicial notice of filings—or *lack* of filings by Mr. Warner—in the Eviction Case under Fed. R. Evid. 201. *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). For the Court's convenience, the parties have filed copies of the docket and relevant filings with this Court, which are undisputed and also available at https://hover.hillsclerk.com/.

[3]     Because Mr. Warner's admissions in pleadings and sworn statements are binding judicial admissions, where possible, this motion cites to Mr. Warner's own filings. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718–19 (11th Cir. 2011) (internal citations omitted) (noting that admissions in pleadings are "proof possessing the highest possible probative value").

71032611;4

6.     Mr. Warner then moved to a new address (Doc. 33, VI.14), but never submitted another change of address in the Eviction Case. (JSOF ¶ 8; 33-1 the Eviction Case Docket).

7.     On June 12, 2020, the Eviction Case was dismissed for lack of prosecution. (JSOF ¶ 16; Doc. 33, VI.16; Eviction Case Dkt. No. 76).

8.     On February 18, 2021, the Clerk mailed letters to all parties in the Eviction Case that any unclaimed court registry funds would be sent to the State of Florida if a response and court order to disburse the funds was not received by April 21, 2021. (JSOF ¶ 17; Doc. 33, VI.17; Eviction Case Dkt. No. 77). The Clerk's notice to Mr. Warner was sent to the Fremont Address. (*Id.*)

9.     The Clerk published notice in the July 9, 2021 edition of *La Gaceta* of the upcoming forfeiture. (JSOF ¶ 19; Doc. 33, VI.18;[4] Fla. Stat. § 116.21(2)).

10.     On September 1, 2021, the Clerk disposed of the funds pursuant to Florida Statute § 116.21, and posted notice to the docket in the Eviction Case. (JSOF ¶ 20; Doc. 33, VI.19).

11.     On **July 29, 2022**, Mr. Warner emailed the undersigned counsel for the Clerk with the subject "Fla. Stat. 772.11 DEMAND LETTER" in which

---

[4]     "[C]ourts may take judicial notice of documents such as . . . newspaper articles . . . for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements)." *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 n.10 (11th Cir. 1999)). In any event, Mr. Warner himself filed the July 9 edition of La Gaceta.

Mr. Warner stated he was "demanding $10,800) for the Clerk "embezzling $3,600 from Mr. Warner" and that "absent either payment or stipulation, a lawsuit will be filed against [the Clerk] for theft" and "other possible causes of action." (Doc. 11-1, 34-1).

12.     On August 26, 2022, counsel for the Clerk emailed Mr. Warner a response to his demand letter. (Doc. 1-2; 34-2).

13.     On August 29, 2022, Mr. Warner filed this case. (Doc. 1).

## III.   STANDARD FOR DETERMINATION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## IV.   MEMORANDUM OF LAW

Mr. Warner brings two sets of claims. Counts I through III relate to the underlying forfeiture of the funds in the Eviction Case against Mr. Warner. Counts IV and V relate to the Clerk attorney's response to Mr. Warner's civil theft demand, accusing the Clerk of embezzlement and theft. Both sets of claims fail as a matter of law, as explained below and as explained in the Clerk's pending motion for judgment on the pleadings. (Doc. 20).

### A.   Mr. Warner's claims regarding the disbursement of funds are meritless.

Count I (Due Process Clause: Adequate Notice and Hearing), Count II (takings Clause: Escrow Funds), and Count III (Breach of Fiduciary Duty:

Embezzlement) fail as a matter of law because: (1) the Clerk complied with Florida Statute § 116.21; (2) no taking occurred; (3) no duty was breached; and (4) Mr. Warner failed to timely bring his claim. The record evidence demonstrates that the Clerk complied fully with the law and provided the notice required.

### 1. The Clerk provided adequate notice and complied with Florida Statute § 116.21, defeating Count I.

This Court should enter summary judgment against Count I because the Clerk provided adequate notice and complied with Florida Statute § 116.21, which bars Mr. Warner's due process claim.

First, the Clerk's motion for judgment on the pleadings already noted the Clerk's compliance with the publication requirement under Florida Statute § 116.21. Doc. 21, at 7–13.

Second, the record developed since the Clerk's motion for judgment on the pleadings further establishes the Clerk provided adequate notice. In the Eviction Case, at a hearing held October 9, **2018**, the county court ruled the deposited funds should be disbursed to Mr. Warner's **landlord** and directed the landlord to submit a proposed order. (Doc. 33, ¶¶ 10-11). Twenty months later, the Eviction Case was dismissed for lack of prosecution on June 12, **2020**. (Doc. 33, ¶¶ 16). On February 18, **2021**, nearly two-and-a-half years after the court had ruled the funds belonged to the landlord, the Clerk mailed notice to

all parties indicating the unclaimed funds would be sent to the State of Florida if a response was not filed before April 21, 2021. (JSOF ¶ 17 & Ex. D; Doc. 33, ¶ 17). The Clerk's February 18, 2021 letter was also posted to the publicly-visible docket for the Eviction Case. (*See* 33-1 Eviction Case Docket, p.2). The Clerk also published notice of the pending forfeiture in the July 9, 2021 edition of *La Gaceta*. (JSOF ¶ 19; Doc. 33 ¶ 18). The Clerk forfeited the funds pursuant to Fla. Stat. § 116.21 on September 1, 2021, and posted notice to the docket in the Eviction Case. (JSOF ¶ 20; Doc. 33 ¶ 19).

Mr. Warner predicates his due process claim on the allegation that "La Gaceta does not meet the requirements of Fla. Stat. § 50.031 for a newspaper to be eligible to publish legal notices" and "La Gaceta does not meet the 'newspaper of general circulation' requirement of Fla. Stat. § 116.21. (Doc. 1, ¶¶ 26-27). The record evidence refutes Mr. Warner's conclusory allegations as a matter of law.

At least one Florida court has already confirmed La Gaceta satisfies these statutes. *See BAC Home Loans Servicing v. Kenneth Brand*, Twelfth Judicial Circuit Court, Sarasota County, Florida, Case No. 2010-CA-9403 (November 16, 2018) ("Order … finding the La Gaceta newspaper meets all statutory requirements for publishing legal notices") (attached as **Exhibit 1**). The Court in *BAC Home Loans* approved the use of La Gaceta in Sarasota County, where La Gaceta has even less readership than Hillsborough County.

71032611;4

Doc. 33-18, at 14:23–15:8 (testifying to the heaviest distribution in the City of Tampa); Doc. 33-19, at 36:17–37:10, 40:11–41:8, 77:22–78:19, 80:20–81:9 (testifying about growth into Sarasota, beginning with limited Sarasota distribution at the time of *BAC Home Loans*).

La Gaceta is a weekly periodical with at least twenty-five percent of its wording in English, its legal notices are freely available online, and it has the necessary periodicals license with the Post Office. (Doc. 33-18, at 18:1–19:19; *see* Fla. Stat. § 50.011(1)(b) (listing the requirements for papers serving notice under Florida Law).[5]

Due process is satisfied if the notice is "reasonably calculated" to reach the person. *See Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1259 (11th Cir. 2002) ("Due process is satisfied so long as the method of notice is conducted 'in a manner 'reasonably calculated' to ensure that notice reaches the alien'").

Here, the Clerk: (i) mailed letters to *all* parties in the Eviction Case at the last address filed with the Clerk; (ii) posted a copy of the letter to the docket in the Eviction Case, which was publicly available on the internet; and (iii) published notice in the La Gaceta newspaper. (Doc. 33, ¶¶ 17-18; Doc. 33-1, p.2

---

[5] Additionally, subsection 50.011(2) states a paper does not need a periodicals license or to otherwise comply with subsection 50.011(1)—which La Gaceta does—to freely publish its legal notices online, which La Gaceta also does. https://lagacetanewspaper.com/legalads/legals070921.pdf (showing the notice in this particular case).

No. 77; Doc. 33-4; Doc. 36-4). There is no dispute the Clerk's letter to Mr. Warner was sent to the Fremont Address, which was the address listed on the last notice of change of address Mr. Warner filed in the Eviction Case. (Doc. 33, ¶ 7; Doc. 33-40; *see also Lee v. U.S. Postmaster Gen.*, 174 F. Supp. 3d 1325, 1326-27 (M.D. Fla. 2016) (holding mailing a notice to the last known address meets the Constitution's due process requirements). Again, the Clerk sent this letter to the address that Mr. Warner himself provided, as he was required to do. Fla. R. Jud. Admin. 2.515(b); Doc. 33, ¶¶ 17-18; Doc. 33-1, p.2 No. 77; Doc. 33-4. The Clerk uses mailed notices, which the parties are obligated to keep up to date, pursuant to the applicable administrative orders. *See* Declaration of Diane Sultenfuss-Thomas, attached as **Exhibit 2**, ¶ 6 (citing to Hillsborough County Administrative Orders (S-2007-036, as amended by S-2019-005). And there is no dispute the Clerk published notice in the La Gaceta newspaper. *See Acevedo v. First Union Nat'l Bank*, 476 F.3d 861, 866 (11th Cir. 2007) (approving notice by publication).

The Clerk was never under any obligation to conduct any further searches for Mr. Warner, at some other address, especially given Mr. Warner's personal knowledge of the funds he had deposited and the prior court order indicating the funds belonged to the landlord and not Mr. Warner.

Again, consider the context. There was a hearing in the Eviction Case where the county court determined the funds should go to the landlord (not to

Mr. Warner). (Doc. 33, ¶¶ 10-13; Doc. 33-3, stating "Court to disburse $ 3398 to the plaintiff [Boutique Apartments LLC]", Doc. 33-8 ¶ 7). After that ruling, no one filed any notice with the court to claim the funds. (Doc. 33-1). Mr. Warner did not seek to recover the funds until March 31, 2022 (Doc. 33-1, p.2), nearly **four-years** after he had deposited them in the court registry and one-and-a-half years after they were forfeited pursuant to Fla. Stat. § 116.21. There is no dispute the Clerk mailed and published notice of the unclaimed funds. While Mr. Warner demands the Clerk do more to find him after he ignored the funds for several years, there is no legal obligation that require the Clerk to do more here. Accordingly, Plaintiff's first three claims fail as a matter of law.

### 2.     Mr. Warner's inaction resulted in forfeiture.

Mr. Warner waited nearly four years, until March 31, 2022, to first seek recovery of the funds he deposited with the court registry in May 2018. The court noted its ruling – that the funds belonged to the landlord and not Mr. Warner – following the October 9, 2018 hearing. Mr. Warner knew where the funds were being held and that an order was required, but he filed nothing in the Eviction Case to indicate he was entitled to the funds or timely seek their return. *See City of West Covina v. Perkins*, 119 S.Ct. 678, 681–82, 525 U.S. 234, 241 (U.S. 1999) ("Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial

procedures available to him. The City need not take other steps to inform him of his options.").

Despite having properly filed a notice of change of address when he moved to the Fremont Address, Mr. Warner failed to file the required notice of change of address when he moved away from the Fremont Address.  *But see Hollis v. W. Academy Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) ("[*P*]*ro se* litigants must nonetheless comply with procedural rules.").

The Clerk mailed notice to all parties and posted the letter to the online docket. And the Clerk published notice in La Gaceta. Still, Mr. Warner took no action to seek the funds before they were forfeited.

Mr. Warner claims the Clerk should have done more to find Mr. Warner, even though a diligent search of the record would only have revealed the funds had been determined to belong to the landlord and not Mr. Warner. *See* Doc. 33, at 4; Doc. 33-8 ¶ 7 (admitting the only record evidence was that the landlord was due to receive them). But the law does <u>not</u> require the Clerk to do more than it did here. *See also* Fla. R. Gen. Prac. & J. Admin 2.516(g) ("**Service by Clerk.** When the clerk is required to serve notices and other documents, the clerk may do so by e-mail as provided in subdivision (b)(1) or by any other method permitted under subdivision (b)(2). Service by a clerk is not required to be by e-mail.") (emphasis in original).

10

Plaintiff, by filing the required notice of address change, implicitly admitted that he understood the obligation to keep the Hillsborough County Court apprised of his contact information. (Doc. 11-3, ¶ 2, Administrative Order S-2019-005, which states "If … self-represented litigant experiences a change of mailing address … must promptly file with the clerk … a separate Designation of Current Mailing and E-Mail Address form for each case associated"). Despite this knowledge, Plaintiff failed to file any further updates to his address despite the three years that passed during the *Boutique Apartments* litigation. *See Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) (citing *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539–40 (Fla. 3d DCA 1992)) (noting that even *pro se* litigants are expected to know and comply with the law); *see also U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . ."). And Mr. Warner took no further action to pursue the funds or monitor the docket in the then-pending action, until it was too late.

Mr. Warner's sworn declaration and his own motion for summary judgment admit that he was well aware of the funds' existence (he explicitly bargained for it), along with the need to file a proposed order so the Court would award the funds to him. Doc. 33, at 4; Doc. 33-8 ¶¶ 7–8; *see also* Fla. R. Civ. P. 1.600 (requiring a court order to disburse registry funds).

71032611;4

Notably, the constitutional requirement of notice does *not* actually require formal notice in all contexts; a party's actual knowledge of a matter can be sufficient. For example, in *VanHorn v. D.E.A.*, this Court held that a person's *actual knowledge* of the DEA's seizure of currency amounted "at a minimum to constructive knowledge of the DEA's seizure of the currency." 677 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) (denying motion to set aside forfeiture under 18 U.S.C. § 983). To obtain relief from forfeiture under section 983, "the movant must show not only that the government knew or reasonably should have known of his interest in the property yet failed to take reasonable steps to notify him, but also that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *Id.* at 1309. The Court further noted the DEA's reasonable efforts to notify the plaintiff of the forfeiture proceeding, including through mailed notice. *Id.* Although "other steps were available" when the certified mail was returned unclaimed, the Court found that the plaintiff's actual knowledge, mixed with the reasonable efforts by the DEA, "comport[ed] with due process." *Id.*

This case presents the same situation. Mr. Warner's arguments alleging insufficient notice (despite the Clerk's efforts) are an attempt to circumvent the undisputed facts: Mr. Warner knew about the funds (he deposited them); Mr. Warner knew the procedure for claiming the funds (the court required a court order to disburse the funds); and Mr. Warner waited multiple years

before taking any further action. Doc. 33 ¶¶ 4-5, 10-13; Doc. 33-8 ¶¶ 7–8. Thus, Mr. Warner cannot show "that he did not know or have reason to know of the seizure within sufficient time to file a timely claim." *VanHorn*, at 1309.

The forfeiture is the inevitable result of Mr. Warner's delay and inaction, but he only has himself to blame. Unless his goal was to set up this lawsuit by ignoring the funds and then after-the-fact attempting to claim extra damages, there was no reason for Mr. Warner to not take prompt action upon allegedly securing the right to move for disbursement of the funds—especially given Mr. Warner's extensive history in litigating as a *pro se* and navigating court rules. *See* Pl.'s Resp. to Def.'s Interrogs., attached as **Exhibit 3,** at 3 (showing at least eight pre-forfeiture lawsuits, plus eight additional "REDACTED" cases).

The Clerk provided ample notice to Mr. Warner and the other *Boutique Apartments* litigants of the unclaimed funds. Mr. Warner's own inaction, despite his actual and constructive knowledge, resulted in their forfeiture. As a result, Judgment in the Clerk's favor is appropriate. *See VanHorn*, at 1311; *see also In re Alton*, 837 F.2d 457, 460–61 (11th Cir. 1988) (affirming judgment against request for extension of time to file objection to bankruptcy discharge, finding "no due process violation" because actual knowledge, even if misleading, obligated party with knowledge to determine the necessary dates for action, and thus could not "properly complain of the consequences of his inaction"); *see also* 11 U.S.C. § 523(a)(3)(A) (noting "actual knowledge" is

13

sufficient in the bankruptcy context, further illustrating a particular form of notice is not always necessary under the Constitution when a party has notice *or actual knowledge*).

### 3. Count II fails as a matter of law because no "taking" occurred.

This Court should enter summary judgment against Count II because no "taking" occurred as a matter of law. A statutory forfeiture of funds is *not* a taking. *U.S. v. Morales*, 36 F. Supp. 3d 1276, 1293–94 (M.D. Fla. 2014) (concluding a claim alleging a violation of the Takings Clause failed because property was forfeited pursuant to statute).

While Plaintiff's complaint does not specify whether he is referring to the Florida Constitution, the Federal Constitution, or both, the relevant provisions from the two constitutions are given the same interpretation and the outcome is the same. *See, e.g.*, *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2011) (noting Florida and federal takings clauses are given the same interpretation), *rev'd on other grounds Koontz v. St. Johns River Mgmt. Dist.*, 570 U.S. 595 (2013); *Silvio Membreno & Fla. Ass'n of Vendors, Inc. v. City of Hialeah*, 188 So. 3d 13, 20 (Fla. 3d DCA 2016) (noting Florida and federal due-process clauses are given the same interpretation).

Under either constitution, takings are situations involving eminent domain—e.g., the government takes part of a person's land to expand a road.

14

But the Supreme Court has noted that the Takings Clause does not apply outside the context of eminent domain:

> Petitioner also claims that the forfeiture in this case was a taking of private property for public use in violation of the Takings Clause of the Fifth Amendment, made applicable to the States by the Fourteenth Amendment. But if the forfeiture proceeding here in question did not violate the Fourteenth Amendment, the property in the automobile was transferred by virtue of that proceeding from petitioner to the State. The government may **not** be required to compensate an owner for property *which it has already lawfully acquired under the exercise of governmental authority **other than** the power of eminent domain.*

*Bennis v. Mich.*, 516 U.S. 442, 452 (1996) (emphasis added); *accord Morales*, 36 F. Supp. 3d at 1293–94.

Simply put, this case does *not* involve eminent domain. Here, Mr. Warner deposited funds into a court registry pursuant to Florida Statute § 83.60(2), and then forfeited those funds by failing to claim them as required by Florida Statute § 116.21. In other words, Hillsborough County obtained the funds through "the exercise of governmental authority other than the power of eminent domain." *Bennis*, 516 U.S. at 452. As a result, the Takings Clause does not apply, and judgment in the Clerk's favor is appropriate.

### 4. The Clerk did not breach any duty.

This Court should enter summary judgment against Count III because Plaintiff cannot establish the elements for breach of fiduciary duty. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary

duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).[6]

Plaintiff alleges the Clerk "engage in self-dealing by unilaterally seizing–without court order–the principal/***Plaintiff***'s funds for their own use without conducting a reasonable/diligent attempt to return the funds or providing adequate notice to ***Plaintiff***." (Doc. 1, ¶ 51) (emphasis in original).

The Clerk did <u>not</u> breach any duty, because the Clerk complied with the requirements of Florida law. Specifically, the Clerk is required to deposit unclaimed funds into the fine and forfeiture fund every year. Fla. Stat. § 116.21(1) ("**Any unclaimed court-related funds** collected or deposited by the clerk which remain unclaimed **must be deposited into the fine and forfeiture fund**") (emphasis added). And having done so, the Clerk receives a full release and discharge of any and all duties related to the deposited funds. Fla. Stat. § 116.21(4) ("**Upon such payment** to the fine and forfeiture fund, the … **clerk shall be released and discharged from any and all** further **responsibility or liability** … .") (emphasis added). The Clerk's compliance with Florida law cannot constitute a breach of fiduciary duty. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014) ("[C]ourts must bear in

---

[6] "A federal court sitting in diversity jurisdiction applies the substantive law of the forum state (in this case, Florida) alongside federal procedural law." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (affirming entry of summary judgment against breach of fiduciary duty claim).

16

mind that the duty of prudence, under ERISA **as under the common law of trusts**, does not require a fiduciary to break the law.") (emphasis added) (citing Restatement (Second) of Trusts § 166, Comment *a* ("The trustee is not under a duty to the beneficiary to do an act which is criminal or tortious")).

Separately, the Clerk did <u>not</u> cause Mr. Warner damage by complying with Florida law. The Clerk: (i) mailed notice to Mr. Warner (and the other litigants); (ii) published the statutorily required notice; and (iii) posted the notice to the publicly-visible docket in the Eviction Case. Mr. Warner's alleged damages were self-inflicted, by his failure to claim the funds within the time required, which bars his claim as a matter of law. *See* Fla. Stat. § 116.21(3) ("**Unless claim is filed within such time** as aforesaid, **all claims in reference thereto are forever barred**.") (emphasis added).

The Clerk is not required to hold the funds in the registry indefinitely until such time as Mr. Warner desires to seek their return. Mr. Warner's multi-year delay is inexcusable when he – as the depositor of the funds – knew they were there the entire time. Moreover, the record in the Eviction Case would only indicate the funds belonged to the landlord and <u>not</u> to Mr. Warner. (Doc. 33, ¶¶ 1, 9-11; Doc. 33-8 ¶ 7). The only suggestion (without any record evidence) the funds *might* belong to Mr. Warner, and not his landlord, is Mr. Warner's sworn statement filed in this case in June 2023 that "after the [October 9, 2018] hearing, **Landlord** and **Plaintiff** [*i.e.*, Mr. Warner] entered

into an agreement to abandon Mr. Warner's remaining counter-claims and third party claims in exchange for the court registry funds." (Doc. 33, ¶ 12; 33-8, ¶ 8) (emphasis in original). Assuming *arguendo* Mr. Warner's statement is true, there is nothing to suggest the Clerk was aware of this agreement or any other fact that would indicate the funds were the property of Mr. Warner, rather than his landlord as the court ruled in the Eviction Case.

Therefore, this Court should enter summary judgment in favor of the Clerk and against Mr. Warner's Count III for breach of fiduciary duty.

## B. Plaintiff's claims regarding the Clerk's response to his accusations of embezzlement and theft fail as a matter of law.

Plaintiff's Count IV (Defamation Per Se: Extortion) and Count V (First Amendment Retaliation: Extortion) fail as a matter of law. Both Counts IV and V are predicated solely on Plaintiff's email demand (Doc. 34-1) and the Clerk's response (Doc. 34-2) to the demand, which was sent only to Plaintiff. There is no dispute over the content of these two documents.

### 1. Plaintiff is unable to show the elements of defamation.

This Court should enter summary judgment against Count IV because Plaintiff cannot establish the elements of a defamation claim. The necessary elements of a defamation claim are: (1) publication of a statement, (2) falsity of the statement, (3) knowledge or reckless disregard by the defendant, (4) actual damages, and (5) the statement must be defamatory. *Jews for Jesus,*

*Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "Publication" requires the defendant "publish[] or communicate[] [the statement] to a third person; statements made to the person alleging the defamation do not qualify." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007).

Here, Plaintiff sent correspondence to the Clerk's counsel and the Clerk's counsel sent a response letter *only* to Plaintiff. (Doc. 1-2; Doc. 34-1, Doc. 34-2). Because the Clerk did <u>not</u> send the response letter to anyone other than Plaintiff, there is no publication and Plaintiff's defamation claim fails as a matter of law. *See Geddes*, 960 So. 2d at 833.

Plaintiff alleges one of the Clerk's attorney's "published" the statements to another one of the Clerk's attorney's and their paralegal. (Doc. 1, ¶ 60; Doc. 34-2). But as a matter of law, this is not sufficient to satisfy the publication element of a defamation claim. *See Geddes*, 960 So. 2d at 833 ("When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication.").

The only person who "published" the response beyond the parties was Plaintiff himself when he chose to file it in this Court's public docket, but that act by him cannot and is not attributable to the Clerk. *E.g.*, *Valencia v.*

*Citibank Int'l*, 728 So. 2d 330, 330–31 (Fla. 3d DCA 1999) (holding plaintiff's decision to publish a statement cannot be attributable to the defendant).

Independently, Plaintiff's claim fails because Plaintiff cannot establish the falsity of the statement; the letter simply noted that he *might* have committed extortion by using threats of criminal accusations to obtain a settlement from the Clerk. Doc. 1-2; Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . .").

Because Plaintiff cannot establish the necessary elements of publication or falsity, this Court should enter judgment as a matter of law against the defamation claim in Count IV.

### 2.   Florida's litigation privilege bars the defamation claim.

Similarly, Florida's broad litigation privilege bars Mr. Warner's defamation claim, even if all required elements were established (they are not). Under the litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). Florida courts have expressly held that litigation privilege applies to

20

"communicative acts" such as correspondences sent during litigation. *E.g.*, *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 525–26 (Fla. 3d DCA 2017); *see also Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 381, 384 (Fla. 2007) (applying the privilege to letters sent that allegedly misrepresented the amount of money that the plaintiffs owed as debts).

The Clerk's attorney's responsive correspondence fits within that scope—it was a direct response to Mr. Warner's own pre-suit communication accusing the Clerk of engaging in purportedly criminal behavior. For the same reason that the litigation privilege would protect Mr. Warner's letter from being the focus of a civil lawsuit (regardless of whether or not Mr. Warner's letter constitutes criminal extortion), the litigation privilege likewise enables the Clerk to respond by pointing out the flaws in Mr. Warner's position. *See Levin*, 639 So. 2d at 608 ("participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim"). Because of Florida's broad litigation privilege, this Court should enter judgment as a matter of law against the defamation claim in Count IV.

### 3.    Mr. Warner did not suffer any retaliatory act.

This Court should enter summary judgment against Count V because Mr. Warner cannot establish the necessary element of any adverse retaliatory act by the Clerk. A plaintiff in a First Amendment retaliation case must show

three elements: (1) he or she engaged in constitutionally protected speech, (2) he or she suffered an adverse action, and (3) a causal relationship exists between the protected speech and the adverse action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)). Here, neither the second nor third elements are present.

In Count V, Mr. Warner alleges first amendment retaliation, based on the Clerk's attorney's response to his demand letter accusing the Clerk of embezzlement and theft. In the response, the Clerk's attorney's explained: "we write to explain why your proposed lawsuit would be frivolous and serve no purpose, other than to subject you to potential liabilities." (Doc. 34-2, p.2). As to these "potential liabilities," the Clerk's attorney's further explained that Mr. Warner's threatened claim under Fla. Stat. § 772.11 "provides a defendant with the right to recover attorney's fees and costs for defending against such a claim." In sum, the Clerk's attorneys explained the legal deficiencies in Mr. Warner's demand and identified the possibility attorney's fees could be awarded to the Clerk if Mr. Warner pursued his threatened claims. On these undisputed facts, Mr. Warner cannot state a claim for First Amendment retaliation as a matter of law.

First, merely threatening counterclaims (which the Clerk did not even do here) is not sufficient to constitute adverse action for purposes of retaliation. *See Smith v. Haynes*, 940 F.3d 635, 648 (11th Cir. 2019) (holding the

22

defendant's discussion of possible counterclaims did not meet "the governing test for what constitutes adverse action"). Similarly, the Supreme Court "has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would 'plant the seed of a constitutional case' in 'virtually every' interchange." *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)). Likewise, the Seventh Circuit has explained that "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation . . . ." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).

Here, the Clerk did not threaten counterclaims; it's response was far tamer and simply noted that Mr. Warner could be liable for attorney's fees and costs if he pursued an unsuccessful civil theft claim. Fla. Stat. § 772.11(1). While the Clerk's letter also explained that threatening to accuse another of a crime in order to obtain money *may* constitute a violation of a criminal statute, *see* Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . ."), the response letter did <u>not</u> threaten any criminal prosecution. (Doc. 34-2, stating "We trust it was not your intent to commit extension.")

23

On these undisputed facts, Mr. Warner's retaliation claim fails as a matter of law because no adverse action occurred. The Clerk's attorneys merely provided a mundane reminder that phrasing matters and notice of the potential for the Clerk to receive an award of its attorney's fees and costs. *Id.* The response did not even rise to the level of a threatened counterclaim, which, even then, would not be actionable. *See, e.g.*, *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-cv-23859, 2015 WL 2374594, at *14 (S.D. Fla. May 18, 2015) (finding a purported threat to countersue a "plaintiff for $300,000 was not [an] adverse action"). Moreover, Mr. Warner cannot demonstrate the response was tied to his exercise of speech. Rather, the language was clear that the Clerk might only seek a fee-shifting award under § 772.11(1) *if* he proceeded with his "proposed lawsuit" under the civil theft statute. (Doc. 1-2).

Finally, Mr. Warner cannot demonstrate he suffered any harm from any alleged retaliation. He still could have filed the lawsuit, in which case the Clerk would have defended against it (as it has defended this case). The Clerk maintains any civil theft claim would be meritless and preserves any and all rights it may have to defend itself under the law, including the statutory right to seek attorney's fees. But noting that possibility is not a retaliatory act. *E.g.*, *Smith*, 940 F.3d at 648. Mr. Warner's Count V, asserting retaliation, is a creative, but legally deficient attempt to recover "damages" in apparent recognition that Mr. Warner can no longer seek to recover the deposited funds

24

due to his own inaction, as explained above. Accordingly, this Court should dismiss Count V as a matter of law because Mr. Warner cannot establish any retaliatory act or harm.

## V.  CONCLUSION

Due to Mr. Warner's own inaction for several years, the funds he previously deposited were forfeited. Barred from recovering these funds by statute, Mr. Warner asserted five creative, but legally deficient, claims, seeking more than he lost.

Mr. Warner admits the last docket entry regarding the funds suggested his former landlord was entitled to the funds. Doc. 33, at 4; Doc. 33-8 ¶ 7. Although Mr. Warner claims to have explicitly bargained for those funds with the landlord—demonstrating his knowledge of the need to collect them—he then took no action to collect them for three years. Doc. 33, at 4; Doc. 33-8 ¶ 8.

While *pro se* litigants are certainly able to represent themselves, they are also responsible for knowing the law. *E.g.*, *L.E.B. v. D.D.C.*, 304 So. 3d 54, 58 (Fla. 2d DCA 2020). Mr. Warner asks this Court to award him the funds he forfeited through his inaction, but the Court should not reward Mr. Warner's unwillingness to act timely on his own behalf when he could have made a difference. And Mr. Warner's claims regarding the pre-suit correspondence fail as a matter of law. Accordingly, the Clerk requests judgment as a matter of law in its favor on all counts.

71032611;4

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*

Counsel for Defendant

26