UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

    Plaintiff,

v.                                        Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
CLERK OF COURTS,

    Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S VERIFIED PARTIAL MOTION FOR SUMMARY JUDGMENT**

Defendant Hillsborough County Clerk of Court submits this response in opposition to Plaintiff Blake Warner's ("Mr. Warner") Verified Motion for Partial Summary Judgment (Doc. # 33) (the "MPSJ").

## I.    INTRODUCTION

This case relates to unclaimed funds Mr. Warner deposited in the court registry in an underlying eviction lawsuit, styled *Boutique Apartments LLC v. Warner*, Hillsborough County Court Case No. 18-CC-022377 (the "Eviction Case"), and then ignored for over three years. Mr. Warner alleges the pre-forfeiture notices were inadequate. And Mr. Warner claims the response to his post-forfeiture civil theft demand letter constituted defamation or retaliation.

1

In his MPSJ, Mr. Warner moves for summary judgment on three of his five claims: (1) "Count I: Due Process", (2) "Count II: Takings Clause", and (3) "Count V: First Amendment retaliation. *See* Doc. 33, pp. 16-24. But the undisputed facts and record evidence demonstrate Mr. Warner is not entitled to relief, and instead the Clerk is entitled to judgment in its favor. Specifically, Mr. Warner received more than adequate notice of the funds in the court registry, he did not experience a "taking," and his retaliation claim is facially meritless. Accordingly, the Clerk requests the Court at a minimum deny Mr. Warner's motion. The Clerk maintains this Court should enter judgment against Mr. Warner's claims, either by granting the Clerk's Amended Motion for Judgment on the Pleadings (Doc. #21) ("AMJP") or its motion for summary judgment (Doc. #37) ("MSJ").

## II.   BACKGROUND

The parties have filed a joint statement of undisputed facts (Doc. #36) ("JSOF"), which is cited as "JSOF ¶ [#]."

## III.   STANDARD FOR DETERMINATION

This Court should enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Milgram v. Chase Bank USA, N.A.*, 2023 WL 3874276, at *3 (11th Cir. June 8, 2023) (internal quotation omitted). The Court reviews all evidence in "the light most favorable to the nonmoving

party" and draw "all justifiable inferences in that party's favor." *Id*. While there is no genuine dispute as to any material fact, *see* JSOF, it is the Clerk – not Mr. Warner – who is entitled to judgment as a matter of law. *See* Clerk's AMJP and MSJ.

## IV. MEMORANDUM OF LAW

Mr. Warner's MPSJ fails to establish the necessary requirements for judgment in his favor. To the contrary, his own sworn statements support the Clerk's prior motions for judgment dismissing all claims. For clarity, this response tracks the order of arguments in Mr. Warner's MPSJ.

### A. Mr. Warner's arguments with respect to his Count I: Due Process claim fail as a matter of law.

#### 1. Although Florida Statute § 116.21 is constitutional, the Court need not evaluate the challenge here.

The thrust of Mr. Warner's due process argument is his suggestion that the entirety of Florida Statute § 116.21 is unconstitutional in all cases. Doc. 33, at 10–11 ("As this law applies to court registry cases, there is ***always*** a last known address associated with the court case so notice by publication is never sufficient.") (emphasis in original). Mr. Warner's premise for challenging the law fails under the undisputed facts of this case.

First, the "last known address" argument fails because the Clerk sent notice to the last known address provided by Mr. Warner himself in the required notice of change of address he filed. *See* JSOF # 6-8, 17, and Ex. D

3

71205288;3

(reflecting Mr. Warner provided the Clerk with the Fremont Address as his address, which is where the Clerk mailed notice). In addition to mailing the notice to Mr. Warner at the last known address he provided to the Clerk, the Clerk also posted a copy of the letter to the docket in the Eviction Case. *See* Doc. 33-1, the Eviction Case Docket, No. 77.

The Clerk's publication in a local newspaper, *La Gaceta*, was in addition to mailing notice to Mr. Warner's last known address and posting notice on the case docket. *See* JSOF, # 6-8, 17, 19 and Ex. D; Doc 33-1 No. 77. And thus, this Court need not entertain Mr. Warner's constitutional challenge to Fla. Stat. § 116.21 because the undisputed facts establish that other forms of notice were provided – not only publication.

Federal courts employ a general "policy of strict necessity in disposing of constitutional issues." *Minnick v. Cal. Dept. of Corr.*, 452 U.S. 105, 122 (1981) (quoting *Rescue Army v. Mun. Court*, 331 U.S. 549, 568 (1947)). As the *Rescue Army* decision noted, the courts draw this policy from the general practice of "refus[ing] to render advisory opinions" and "the case and controversy limitation" of Article III of the Constitution. 331 U.S. at 568. To that end, the Supreme Court has urged judicial restraint in cases involving facial challenges to statutes. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) ("Facial challenges are disfavored … Facial challenges also run contrary to the fundamental principle of judicial

4

restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it' nor 'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'") (internal citation omitted). Here, the precise facts do <u>not</u> require the Court evaluate the constitutionality of publication-only notice because other forms of notice were provided.

Moreover, a party's general obligation for due process purposes is to give notice that is "reasonably calculated" to reach the intended recipient. *Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1259 (11th Cir. 2002) (finding notice was sufficient if sent to the last address provided by the intended recipient, especially where recipient had an "affirmative duty to provide the government with a correct address").

This Court has noted that in cases involving property in the government's possession, a citizen's actual knowledge of the property being in the government's possession is sufficient notice. *VanHorn v. D.E.A.*, 677 F. Supp. 2d 1299, 1311 (M.D. Fla. 2009) ("VanHorn is entitled to no relief under Section 983(e) because, even if for an unknown reason VanHorn received no notice of the certified mail, VanHorn knew or should have known of the seizure of the currency within sufficient time to file a timely claim."). Here, Mr. Warner knew the funds were in the court registry because he deposited

them, and he knew an order was required for disbursement because of the prior court rulings. *See* JSOF # 3 & 12.

Importantly, the Supreme Court previously explained the scope of due process with respect to property in the government's possession. *See City of West Covina v. Perkins*, 525 U.S. 234 (1999). In *Covina*, the adverse action was greater because the governmental entity there actually "seized" property as part of a search warrant. *Id.* at 237. In contrast, here the Clerk did not "seize" anything in this case; Mr. Warner knowingly deposited the funds at issue with it pursuant to Florida Statute § 83.60(2), which requires a tenant facing an eviction to deposit his or her rent money with the court pending the outcome of the eviction action. Regardless, as *Covina* makes clear, once the party is aware of where the property is located, the obligation to uncover the procedure for recover falls on the party – not the government. *Id.* at 240-41.

The Court explained:

> [W]hen law enforcement agents seize property pursuant to a warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return. . . . Individualized notice that the officers have taken the property is necessary in a case such as the one before us because the property owner would have no other reasonable means of ascertaining who was responsible for his loss.
>
> No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. **Once the property owner is informed that his**

6

> **property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The city need not take other steps to inform him of his options**. . . . [W]e have not concluded that the State must provide further information about those procedures.

*Id.* at 240–41 (emphasis added). A holding to the contrary would "conflict[] with the well-establish practice of the States and the Federal Government," rendering rules such as Federal Rule of Criminal Procedure 41(d) along with "every analogous state statute" unconstitutional. *Id.* at 243–44.

*Covina* is consistent with the general requirement—found in both Florida and federal law—that litigants (including *pro se* litigants) are responsible for knowing the law. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . ."); *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999) (citing *Kohn v. City of Miami Beach*, 611 So. 2d 538, 539–40 (Fla. 3d DCA 1992)). Mr. Warner knew he had a responsibility to keep the court and Clerk apprised of his current address, and he knew that disbursement of the funds required an order. JSOF ¶¶ 7, 12, 14; Doc. 11-3; Fla. R. Civ. P. 1.600.

The undisputed facts establish Mr. Warner had actual knowledge of the funds on deposit and that the Clerk provided sufficient notice:

1. Mr. Warner knew he was a party to the Eviction Case. JSOF ¶¶ 2–13.

2. Mr. Warner knew he deposited the funds at issue into the court registry in the Eviction Case. JSOF ¶ 4, Ex. A (receipts for the deposits Mr. Warner made).

3. Mr. Warner knew he was required to update his current address, and initially complied by providing the Clerk with the Fremont Address. JSOF ¶¶ 7–8, ex. B; Fla. R. Jud. Admin. 2.515(b); Doc. 11-3, ¶ 2; *see also Hung Thien Ly*, 646 F. 3d at 1315 (noting *pro se* litigants must know and follow the law); *Gladstone*, 729 So. 2d at 1004 (same).

4. Mr. Warner knew the county court required an order to disburse the funds. JSOF ¶ 12, Ex. C; *see also* Fla. R. Civ. P. 1.600 ("Money paid into court under this rule shall be deposited and withdrawn by order of court.").

5. Mr. Warner alleges he negotiated with the landlord-plaintiff in the Eviction Case to receive the money, despite the court finding the landlord-plaintiff was entitled to receive it. *Id.* at ¶¶ 10–13, Ex. C. Clearly, Mr. Warner knew the location of the money and the process for obtaining it. *See City of West Covina*, 452 U.S. at 241; *VanHorn*, 677 F. Supp. 2d at 1309, 1311. *Compare City of West Covina*, 452 U.S. at 236–37 (showing the notice the plaintiff in that case received), *with* JSOF Ex. A (showing the receipts Mr. Warner received).

6. The Clerk sent letters to all the parties notifying them of the unclaimed funds. JSOF ¶ 17, Ex. D. And the Clerk sent the letter to Mr.

8

Warner at the address he himself provided in the required notice of address change form. *Id.* at ¶¶ 7–8, 17; Doc. 11-3.

7. The Clerk also published a copy of the letter on the docket in the Eviction Case. Doc. 33-1 No. 77.

8. After nearly three years of inactivity by Mr. Warner, the Clerk published notice of the unclaimed funds in La Gaceta, which is a paper that fully complies with Florida Statute §§ 50.011 and 116.21. JSOF ¶ 19, ex. E; MSJ IV.A.1 and Ex. 1 thereto.

In short, this Court need not and should not entertain Mr. Warner's constitutional challenge to publication-only notice here because Mr. Warner had actual knowledge of the funds and because the Clerk provided other forms of notice.

### 2. Florida Statute § 116.21 complies with due process.

Although the Court need not resolve Mr. Warner's challenge, Fla. Stat. § 116.21 is constitutional because it relates solely to "unclaimed monies deposited" with the Clerk of the Court. *See Covina*, 525 U.S. at 241 (holding municipality was not required to take other steps to notify owner of remedial procedures once the owner was informed of where the property was held). Again, unlike in *Covina*, there was no mystery of where the property went because Mr. Warner himself deposited them into the court registry during active litigation. *See* Florida Statute § 83.60(2) (requiring tenants to deposit

9

unpaid rent amounts during eviction actions, as in the Eviction Case). Mr. Warner knowingly deposited the funds at issue; he knew they were there. JSOF ex. A (showing the receipts Mr. Warner received, which were also published to the docket). Again, Florida Statute § 116.21 deals with parties who are fully aware of where funds are and the steps needed to claim them. *See* 525 U.S. at 241. At *any* point during the three-year gap from October 2018 (when the parties had their hearing at which the Hillsborough court required a proposed order to disburse the funds) to September 2021 (when the funds were forfeited), Mr. Warner could have submitted a claim. JSOF ¶¶ 11, 20. His failure to do so does not justify a broad attack on an entire statutory framework that is constitutional both facially and as-applied.

      **3.    The Clerk was not required to search for Mr. Warner.**

Mr. Warner implies the Clerk was required to search for, and possibly guess, at alternative addresses for him. *See* PMSJ, p. 13 (section VII(3)). Mr. Warner does not provide any factual or legal basis for his implied contention that the Clerk for his county-court Eviction Case, would have access to or a basis to rely on information associated with his driver's license, the Florida state-wide e-portal system (which is separate from the Hillsborough County Clerk's system, *see* Doc. 31-2, ¶¶ 4-5), or to confirm he was the same Mr. Warner named in other litigation. Regardless, even if the Clerk had been able to use any of these other sources to find Mr. Warner, there is no requirement

10

that the Clerk do so. *See Covina*, 525 U.S. at 241 (holding municipality was not required to take other steps). And further, Mr. Warner's claim the Clerk needed to do more than *Covina* requires fails here because the filings in the Eviction Case indicated the owner of the property was Mr. Warner's landlord, and not Mr. Warner. *See* JSOF ¶ 12 and Ex. C (reflecting court's ruling that funds would be disbursed to landlord).

### 4. The Clerk used the last address Mr. Warner provided to the Clerk for this purpose.

There is no dispute the Clerk mailed notice to Mr. Warner at the address he last provided to the Clerk in his notice of change of address filing. *See* JSOF ¶¶ 6-7, 17. The Clerk also posted the same notice to the docket publicly available on the internet. Doc. 33-1 No. 77.

Unable to explain why he failed to take any action over the three-year period the Eviction Case sat idle and unable to excuse his failure to file a second notice of change of address form as required, Mr. Warner argues the Clerk should have contacted him some other way, including by mailing notice to his mother. Doc. 33, at 12–13. Mr. Warner does not provide any legal support for sending notice to his mother's address or to impose a duty on the Clerk to use addresses employed by other entities, like the City of Tampa (which is obviously separate from the Clerk of the Hillsborough County court), especially where Mr. Warner had provided the Clerk with a notice of

11

change of address form identifying where notice should be sent. JSOF ¶¶ 7–8, ex. B; Doc. 11-3. Mr. Warner cites to a supposed list of other cases in which he was involved, but never rebuts the undisputed fact that notice was provided on the docket and to the address he himself provided in the Eviction Case. JSOF ¶¶ 7–8, Ex. B.

Mr. Warner's complaint alleging insufficient notice and lack of due process fails as a matter of law because: (1) the Clerk sent notice to the last address Mr. Warner filed for the Clerk to use; (2) the Clerk published notice on the docket in the Eviction Case to which Mr. Warner was a party; and (3) the Clerk published notice in *La Gaceta*, a local newspaper meeting the requirements of Florida law for legal publications.

**B.  Mr. Warner's arguments with respect to his Count II: Takings Clause claim fail as a matter of law because Mr. Warner did not experience a taking.**

Although Mr. Warner attempts to confuse the issues by offering a purported definition of "escheatment," it does not change the fact that he cannot demonstrate the Takings Clause applies in this case. MPSJ at 1–2, 14–15.[1] The Takings Clause *only* applies when the government exercises its power of eminent domain. *Bennis v. Mich.*, 516 U.S. 442, 452 (1996) ("The

---

[1] Mr. Warner appears specifically to confuse escheatment, as he cites to a case (*Choice Plus, LLC v. Department of Financial Services*, 244 So. 3d 343) that involved a specific statutory scheme under Chapter 732 of the Florida Statutes regarding unclaimed property in probate estates.  That case is irrelevant to this situation, which involves a party depositing money with the court, then failing to claim it.

12

government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."). In contrast, a statutory forfeiture of funds is *not* a taking. *U.S. v. Morales*, 36 F. Supp. 3d 1276, 1293–94 (M.D. Fla. 2014) (concluding a claim alleging a violation of the Takings Clause failed because property was forfeited pursuant to statute). Holding otherwise would effectively forbid *all* governmental forfeitures—it would essentially declare all movements of property to the government as "takings." In other words, if a person forfeited $2,000 for any reason, the government would then have to pay that person $2,000 as "compensation" for the forfeiture. This position is absurd and unsupported by any of Mr. Warner's cited cases.

**C. Mr. Warner's arguments with respect to his Count V: First Amendment Retaliation claim fail as a matter of law because he fails to establish the required elements.**

Mr. Warner has the *affirmative* burden of demonstrating he would be entitled to a directed verdict on each element of his First Amendment retaliation claim. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–16 (11th Cir. 1993). He fails to do so. *See* MPSJ, at 15–18. A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in constitutionally protected speech, (2) the plaintiff suffered an adverse action, and (3) a causal relationship exists between the protected speech and the

13

adverse action. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Mr. Warner appears to confuse a retaliatory prosecution with the undisputed facts in this case. Here, the Clerk, through its undersigned counsel, sent Mr. Warner a letter responding to his civil theft demand letter. JSOF Exs. I-J. Mr. Warner's civil theft demand accused the Clerk of "embezzlement" and "theft" and threatened to sue if he was not paid more than he had deposited with the Clerk. *Id.* In response, the Clerk through the counsel (the same counsel Mr. Warner emailed with his initial demand letter), explained the factual and legal deficiencies in Mr. Warner's threatened actions. *Id.* The Clerk did <u>not</u> threaten legal prosecution or even to file a counterclaim, but merely cautioned Mr. Warner that if he brought a civil theft claim, the Clerk would be entitled to seek its attorney's fees and costs for defending such a claim. *Id.* The Clerk also cautioned that Mr. Warner's unfounded accusations "may" be interpreted as an unlawful act. *Id.* But the Clerk's response letter never threatened to pursue any prosecution – even if appropriate – against Mr. Warner. *Id.*

Mr. Warner argues "[a] person of ordinary firmness[] would interpret [the Clerk's response] as a veiled threat for criminal prosecution if *Plaintiff* followed through with his legal demand and initiated civil legal proceedings against *Defendant*." MPSJ, at 15. First, a person of ordinary firmness would

14

understand that the Clerk's office is not a prosecutor and does not bring criminal actions. Second, a person of ordinary firmness would not interpret the Clerk's tame reminder about the importance of phrasing as a threat, especially given the complete language of the letter. JSOF Ex. J ("We trust it was not your intent to commit extortion."). Third, Mr. Warner fails to demonstrate that he in fact *did not* commit extortion by attempting to shake down the Clerk by accusing it of criminal conduct. Fla. Stat. § 836.05 (explaining that a person commits extortion by maliciously threatening "to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever . . . ."). Fourth, Mr. Warner *in fact brought this lawsuit, thus proving he was never actually felt threatened.*

Additionally, merely threatening counterclaims (which is more "adverse" than the Clerk's statements in this case) is not sufficient to constitute adverse action for purposes of retaliation. *See Smith v. Haynes*, 940 F.3d 635, 648 (11th Cir. 2019) (holding the defendant's discussion of possible counterclaims did not meet "the governing test for what constitutes adverse action"). Similarly, the Supreme Court "has condoned limiting retaliation liability when the challenged government action, whether conduct or speech, is so pervasive, mundane, and universal in government operations that allowing a plaintiff to proceed on his retaliation claim would 'plant the seed of a constitutional case' in 'virtually every' interchange." *The Baltimore*

15

*Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)). Logically, the law must permit a government entity to engage in the "mundane" action of responding to a demand letter served upon it. *See also Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation …"). Mr. Warner, having failed to timely request disbursement of the funds, cannot now manufacture a claim by feigning distress over receiving a mundane response letter. Accordingly, the Court should deny Mr. Warner's PMSJ with respect to his First Amendment Retaliation claim.

### D. Mr. Warner's arguments with respect to the Clerk's defenses are unpersuasive and irrelevant.

As set forth above, the Court should deny Mr. Warner's PMSJ, and thus, the Court need not address the Clerk's affirmative defenses. Independently, Mr. Warner's responses are legally insufficient to satisfy his burden. *See Fitzpatrick*, 2 F.3d at 1115 ("the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (internal citation omitted). To not already addressed above, the Clerk notes the following in response to Mr. Warner's attacks:

16

**1 and 3.     Compliance with Florida Statute § 116.21.** Mr. Warner argues federal preemption overrides section 116.21 and that La Gaceta is not compliant with Florida law. MPSJ, at 19–20, 24-25. The Clerk explained above that it complied with all required due process. *See* § IV.A, *infra*. And prior Florida cases and the record establish that La Gaceta satisfies the requirements of Florida law. *See* Doc. 37-1, Clerk's MSJ Ex. 1, *BAC Home Loans Servicing v. Branad*, No. 2010-CA-9403 (Sarasota Circuit Court, Nov. 6, 2018) (Ordering holding "*La Gaceta* meets all statutory requirements for publishing legal notices in Sarasota County").

In attacking La Gaceta, Mr. Warner relies on a post-publication statute – the 2022 amendment to Florida Statute § 50.011. Doc. 33, at 20 (admitting the amendment was *after* the Clerk satisfied its duty to publish notice); *Smiley v. State*, 966 So. 2d 330, 336 (Fla. 2007) (noting that statutes affecting duties are presumed to apply only *prospectively*); *Thayer v. State*, 335 So. 2d 815, 817 (Fla. 1976) (emphasis added) ("A statute operates prospectively unless the intent that it operate retrospectively is *clearly expressed*."). Regardless of the retroactivity point, Mr. Warner overlooks that La Gaceta *continues to satisfy the current version of the law*. Section 50.011 does not require a paper to have an audience of at least 10% of households; it requires a paper to either satisfy that requirement *or* be entered as periodical class mail in the county. Doc. 33-18, at 18:1–19:19 (showing La Gaceta has the

17

periodicals license, has at least twenty-five percent of its wording in English, and is available to the public generally while discussing topics relevant to the Tampa community); Doc. 33-19, at 85:18–88:25 (discussing La Gaceta's qualifications and interest to the general public); Doc. 37-1 (showing a court's finding that La Gaceta complies with the law). And in any event, its notices are available online, satisfying subsection 50.011(2) (which alleviates any requirement to comply with subsection (1), though La Gaceta does so). Doc. 33-18, at 18:1–19:19.

**2, 7-9, 13-14.   Delay, Negligence, Inaction and Condition Precedent.** Mr. Warner failed to update his address in the Eviction Case when he moved away from the Freemont Address, despite having filed a change of address notice earlier in that same case. Mr. Warner, having deposited funds in the Eviction Case, failed to timely move the Court for an order requiring disbursement of the funds to him. Because of his inaction and failure to respond, the Clerk turned the funds over to the fine and forfeiture fund more than three years after they were first deposited. As a result of Mr. Warner's inaction and failure to make the appropriate filings in the Eviction Case, the Clerk has been prejudiced by the loss of the funds Mr. Warner now demands from the Clerk. On these undisputed facts, *see* JSOF. ¶¶ 3, 7–8, 10–14, Exs. A–C, the doctrines of Laches, Waiver, Assumption of Risk, and condition precedent all operate to defeat his claims.

18

Contrary to Mr. Warner's arguments, federal law in fact *does* require that very compliance. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)) ("[I]gnorance is no hidden virtue; a *pro se* [litigant] must follow the rules of procedure . . . ."). And Mr. Warner's reliance on his filings with the Florida e-portal do not impact the analysis because the Clerk has nothing to do with Florida's state-run e-file system; it uses systems under its actual control. Doc. 37-2, ¶¶ 4-5.

**5. Litigation Privilege.** The litigation privilege bars Mr. Warner's defamation claim. It also provides a barrier to Mr. Warner's First Amendment Retaliation claim, because Mr. Warner must establish a rare circumstance where the retaliation was especially egregious given that it took place in the litigation context of the exchange of a demand letter and response. *Steffes*, 144 F.3d at 1075 ("it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation …").

V. **CONCLUSION**

The Clerk maintains this Court should enter judgment in its favor, as described in its motion for judgment on the pleadings (Doc. 21) and motion for summary judgment (Doc. 37). Regardless, this Court should deny Mr. Warner's MPSJ because he cannot establish entitlement to judgment as a matter of law on the undisputed facts.

19

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

*/s/ Jason L. Margolin*
Counsel for Defendant