UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLAKE WARNER,

      Plaintiff,

v.                                    Case No. 8:22-cv-01977-MSS-SPF

HILLSBOROUGH COUNTY
CLERK OF COURTS,

      Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF
SUMMARY JUDGMENT**

Defendant Hillsborough County Clerk of Court (the "Clerk") replies to Mr. Warner's Response (Doc. 38) (the "Response") in further support of its Motion for Summary Judgment (Doc. 37) (the "Motion").

**I.    Mr. Warner's Response underscores the Clerk's point: ignorance of the law is no excuse for Mr. Warner's inaction.**

In its Motion, the Clerk explains Mr. Warner's inaction and failure to comply with the applicable rules led to the forfeiture he challenges. *See* Doc. 37, at 5-6, 9-14.

Mr. Warner's Response implies that self-professed ignorance helps him here. Doc. 38, at 6 ("Mr. Warner knew nothing of any duty to continuously file address change notices on the docket . . . ."); Doc. 38-3 ¶¶ 4–8 ("[Mr. Warner]

1

71376318;2

never read any of the local court rules or administrative orders before or during the pendency of [the underlying eviction lawsuit]."). It does not.

Ignorance of the law is no excuse. *See* Doc. 37, at 10 (citing *Hollis v. W. Academy Charter, Inc.*, 782 F. App'x 951, 954 (11th Cir. 2019) for the proposition that pro se litigants must comply with procedural rules). There is no due process violation here: federal courts and Florida courts alike have recognized that *pro se* litigants are responsible for knowing the law. *U.S. v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011); *Gladstone v. Smith*, 729 So. 2d 1002, 1004 (Fla. 4th DCA 1999).

Mr. Warner made the decision to proceed as a *pro se* litigant in the underlying eviction action. By doing so, he undertook the responsibility to learn and comply with the rules. *See, e.g.*, Fla. Stat. § 454.18 (noting litigants may appear *pro se*, but in doing so they subject themselves "to the lawful rules and discipline of" the courts in which they appear). That included the rule to keep the court apprised of his current address, which could have avoided this entire situation. Doc. 11-3 ¶ 2 (requiring *pro se* litigants to file notices of address changes). Accepting Mr. Warner's position would only encourage ignorance and undermine the entire point of having rules in the first place.

2

## II. Mr. Warner's suggestion that the Clerk should operate as a bank is unreasonable.

This Court should dismiss Count III because the Clerk complied with the requirements of Florida law and did not breach any duty. *See* Motion, pp. 15-18. In Response, Mr. Warner tries to equate the Clerk with a bank and states:

> [Mr. Warner] would love to be "burdened" with being paid approximately 3 percent upfront to hold the funds on top of collecting interest on the principal indefinitely with the possibility that the owner may never show up to claim the funds.[1] I would gladly hold any funds anyone wants to give me for as long as they want. To pretend that [the Clerk was] harmed or burdened by this is nonsensical.

*See* Response, pp. 8-9.

In other words, Mr. Warner contends the Clerk has an obligation to operate as his bank forever. Mr. Warner's position is unsupported in any case law, statute, or other source of authority, which is presumably why the Response is devoid of any authority here. At most, the Response cites generally to a docket. *See* Response, p.9 (citing *Maron v. Patronis*, No. 4:22-cv-00255, filed in the Northern District in July 2022). No substantive orders have been entered in *Maron*, but a motion to dismiss (addressing Chapter 717 of the Florida Statutes and not the Section 116.21 at issue here) remains pending.

---

[1] It is unclear where Mr. Warner gets "3 percent," as the Clerk actually charged less than that per Florida Statute § 28.24(11).

Mr. Warner also objects to the Clerk's characterization of his multi-year inaction that led to the forfeiture in this case. *See* Doc. 38, at 5–6. But it is tough to imagine a better word for what Mr. Warner did (or did not do). He knew where the money was, he explicitly negotiated to receive the money, and he then proceeded to do nothing for years. Doc. 37, at 9–10 (describing the still-unexplained delay in Mr. Warner's efforts to claim the funds he deposited). Mr. Warner's efforts to distinguish the cited the *City of West Covina v. Perkins*, 119 S.Ct. 678, 681–82, 525 U.S. 234, 241 (U.S. 1999) case are unpersuasive. *See* Response, p.5 (suggesting this case is different because "no evidence suggests that Mr. Warner knew . . . his funds were at risk in any way."). Again, ignorance of the law is no excuse. *See supra* Section I (noting *pro se* litigants cannot claim ignorance of the law as an excuse).

In sum, there is no reason to treat the Clerk as a bank. Rather, the Clerk is a governmental entity in Florida responsible for filings in the various Hillsborough County courts. Mr. Warner's efforts to distract from his own failures are unconvincing, and the Clerk requests judgment in its favor.

### III. Mr. Warner's arguments underscore the importance of parties protecting their own interests by following the relevant rules.

Mr. Warner asserts several arguments in response to the undisputed evidence that his own inaction led to the forfeiture in this case. First, he suggests the Hillsborough County court's local rule requiring litigants to file

4

71376318;2

notices of address changes is nothing but "an obscure court rule" that somehow "conflicts with federal minimum due process . . . ." Doc. 38, at 6. Yet again, Mr. Warner makes a futile plea for the court to accept self-professed ignorance of the law as an excuse. *But see supra* Section I (noting that ignorance of the law is not an excuse in state or federal courts for a failure to comply with local rules); *Hollis*, 782 F. App'x at 954 ("[P]*ro se* litigants must nonetheless comply with procedural rules.").

Additionally, this argument ignores the case law recognizing that where a law requires a party to maintain up-to-date contact information, those laws themselves are "notice" to the party and any failures to do so are in turn attributable to the party. *See, e.g.*, *Dominguez v. U.S. Atty. Gen.*, 284 F.3d 1258, 1260 (11th Cir. 2002) (quoting *U.S. v. Estrada-Trochez*, 66 F.3d 733, 736 (5th Cir. 1995)) ("[U]ltimate fault lies with the Appellant for [her] failure to comply with a [change of address notification] law that is essential to the administration of the INS."); *McGuire v. City of N.Y.*, 301 F. Supp. 2d 333, 336 (S.D.N.Y. 2004) (holding that mailings to a last known address complied with due process where the law placed the burden on the individual to notify the government of any address changes); *see also Estrada-Trochez*, 66 F.3d at 736 (rejecting a party's argument that the government should have notified him through various family members, given that the government sent mail notice to the party's last known address). There is no realistic limiting factor to Mr.

5

Warner's position; it is essentially an argument that *pro se* litigants do not need to comply with local rules they do not bother reading. The administrative orders requiring notices of address changes are clear local rules, and Mr. Warner's attempt to denigrate them as "obscure" misses the point that he was still under an obligation to comply with them. *See* Doc. 11-3 ¶ 2.

Second, Mr. Warner places substantial emphasis on whether he in fact had the right to claim the funds. Doc. 38, at 2–3. As a starting point, the Clerk does not dispute for these purposes the idea that Mr. Warner had some off-the-record arrangement with the landlord that he could claim the funds instead of the landlord. But the Clerk is not able to divine these types of behind-the-scenes facts; it relies on parties to keep it apprised, and what Mr. Warner *cannot* deny is that everything in the record *does* in fact make it appear as though the landlord was the party with the right to seek the funds. Doc. 36 ¶ 12; Doc. 36-3. The absence of a final order caused the Clerk to attempt to contact *everyone* involved in the underlying eviction action. Doc. 36 ¶¶ 17, 19; Doc. 36-4. In other words, the Clerk was sending a clear message to the parties: "We do not know where this money should go, and one of you needs to claim it." Mr. Warner's failure to do so is entirely on him.

The law is clear: A party's failure to take steps to protect him- or herself will not be rewarded. When a party is aware that the government is in possession of funds he or she wishes to claim, it is that party's obligation to in

6

fact claim them. *Covina*, 525 U.S. at 241 ("Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options."). Mr. Warner's attempt through this lawsuit is to point the finger at everyone other than himself, when in fact he had multiple years to take *any* action to protect his claimed rights.

### IV. Mr. Warner fails to offer any support for his takings claim.

The takings claim does not fit in these facts, because no constitutional "taking" ever occurred. *See* Motion, pp. 14–15. Rather than addressing this point and offering *any* source of authority suggesting a taking occurred, Mr. Warner instead tries to distinguish *one* of the Clerk's cited cases. *See* Response, p. 7 (trying, unsuccessfully, to distinguish *Bennis v. Michigan*). Mr. Warner suggests *Bennis* is distinguishable "because it was not about adequate notice or opportunity to be heard . . . ." *Id.* Mr. Warner's argument merely conflates his takings claim with his due process claim. Additionally, the Response fails to address any of the other cases holding there needs to be an eminent domain action for the Takings Clause to apply. *See id.*; Motion, pp. 14-15 (discussing several cases including *U.S. v. Morales*, 36 F. Supp. 3d 1276 (M.D. Fla. 2014)). Accordingly, summary judgment in the Clerk's favor remains appropriate on this count.

**V.     Mr. Warner mistakes the importance of Florida Statute § 116.21 operating as a *state law* defense with respect to his fiduciary duty claim.**

Mr. Warner again conflates his counts when he suggests the constitutionality of Florida Statute § 116.21 has any bearing on whether that state-created defense applies to the state-created claim of breach of fiduciary duty. Breach of fiduciary duty claims do not flow from the federal Constitution, and Florida is fully capable of offering any defenses to those claims that it might like. And federal courts considering state-law claims apply the substantive law of the forum state (Florida here) when determining those claims. *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (affirming entry of summary judgment against breach of fiduciary duty claim).

**VI.    Mr. Warner's abandonment of his defamation claim warrants judgment in the Clerk's favor.**

Although Mr. Warner's abandonment of his defamation claim in his summary judgment response does not technically comply with Federal Rule of Civil Procedure 41, his failure to address the Clerk's points does result in judgment in the Clerk's favor. Doc. 38, at 9; *see also* Doc. 26, at 7 (citing *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984)) ("Failure to oppose any motion for summary judgment may result in the entry of a judgment for the movant without further proceedings.").

8

## VII. Mr. Warner fails to rebut the Clerk's arguments regarding his retaliation claim.

Finally, Mr. Warner does not address the vast majority of the Clerk's points regarding his supposed First Amendment retaliation claim. Rather than offering any positions in *support* of why his claim allegedly has merit, he instead offers only two brief paragraphs with no supporting authorities. Doc. 38, at 9. He does not address any of the numerous cases noting that in-litigation communications do not give rise to retaliation liability. *See, e.g.*, *The Baltimore Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006) (quoting *Connick v. Myers*, 461 U.S. 138, 148–49 (1983)); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998); *Tzoc v. M.A.X. Trailer Sales & Rental, Inc.*, No. 13-cv-23859, 2015 WL 2374594, at *14 (S.D. Fla. May 18, 2015). And he fails to address these points or offer any cases suggesting the Clerk did anything even remotely close to "retaliation" in this case because he cannot—nothing supports his theory. Rather, his theory is just a futile effort to create damages in a manufactured lawsuit. *See generally* Doc. 36. Enough is enough, and the Clerk requests judgment in its favor.

        Respectfully submitted,

        /s/ *Jason L. Margolin*
        **Jason L. Margolin, Esq.**
        Florida Bar No. 69881
        jason.margolin@akerman.com
        judy.mcarthur@akerman.com
        **Gregg M. Moran, Esq.**

9

Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July 2023, I filed the foregoing using the Court's e-portal and served an additional copy on Blake Warner at blake@null3d.com.

/s/ *Jason L. Margolin*
Counsel for Defendant

10

71376318;2